Jose PENA, Appellant,

v.

The STATE of Texas.

No. PD–0966–05.

Court of Criminal Appeals of Texas.

April 26, 2006.

Scott Ramsey, Houston, for Appellant.

Jeffrey L. Van Horn, First Asst. State's Atty., Matthew Paul, State's Atty., Austin, for State.

KELLER, P.J., delivered the opinion of the Court in which PRICE, JOHNSON, HOLCOMB, and COCHRAN, JJ., joined.

The Court of Appeals reversed appellant's conviction after determining that the Texas Constitution grants broader protection than the United States Constitution when evidence is lost or destroyed. This issue was neither raised on appeal nor briefed by the parties. We hold that the

Court of Appeals erred in failing to give the parties the opportunity to brief the issue.

## I. BACKGROUND

Appellant was charged with possession of marijuana. Before trial, he requested an independent analysis of the evidence. It was discovered that the alleged marijuana had been destroyed and, except for a lab report, all records documenting the testing of the evidence were lost. Appellant objected, contending that admission of the lab report after the physical evidence had been destroyed would violate due process under the Fourteenth Amendment to the United States Constitution and due course of law under the Texas Constitution.[1] His objections were overruled, the lab report was admitted, and appellant was ultimately convicted.

On appeal, appellant contended that the trial court "erred in admitting testimony of test results concerning alleged marijuana when this material evidence and the original file concerning this evidence had been destroyed or lost prior to trial and without independent testing." In support of his claim, appellant relied upon federal caselaw addressing the due process implications of destroying potentially exculpatory evidence—specifically *California v. Trombetta*[2] and *Arizona v. Youngblood*.[3] He did not claim that the Texas Constitution conferred broader protection than that articulated in the federal cases. The State's brief likewise discussed the federal standard and argued that appellant had not made the requisite "bad faith" showing.

On its own, the Court of Appeals decided to address whether the Texas Constitution's Due Course of Law provision grants defendants greater protection than the United States Constitution.[4] The court explained that the Texas Constitution must be interpreted independently of the United States Constitution.[5] In conducting this independent interpretation, the appellate court determined that the language of the Due Course of Law provision is different from and "arguably significantly broader than" the language found in the counterpart provision of the United States Constitution.[6] The court also found that some other states had rejected *Youngblood* in interpreting their own constitutions, that "bad faith" is an unworkable standard, that serious questions concerning the fundamental fairness of the trial can occur even in the absence of bad faith, and that recent findings of negligence in the handling of evidence in crime labs across the country—and in Texas—"demand that courts exercise caution when analyzing lost or destroyed evidence."[7]

The appellate court held that the Texas Constitution requires the State to preserve evidence that has apparent exculpatory value when comparable evidence is not reasonably available to the defendant.[8]

1. U.S. Const., Amend. XIV ("nor shall any State deprive any person of life, liberty or property without due process of law"); Tex. Const., Art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land").

2. 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

3. 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

4. *Pena v. State*, 166 S.W.3d 274, 278–283 (Tex.App.-Waco 2005).

5. *Id.* at 278.

6. *Id.*

7. *Id.* at 278–281.

8. *Id.* at 281.

When exculpatory evidence is lost or destroyed, the State's case must be dismissed.[9] When evidence that is potentially useful is lost or destroyed, a balancing test should govern whether the State's case should be dismissed.[10] The court would balance "the degree of negligence involved" against "the significance of the destroyed evidence considered in light of the probative value and reliability of secondary evidence that remains available," and "the sufficiency of the other evidence used at trial to support the conviction." [11] After conducting this balancing test in the present case, the Court of Appeals concluded that appellant had been denied due course of law under the Texas Constitution.[12]

Chief Justice Gray dissented, complaining, among other things, that appellant did not argue in his brief that the Texas Constitution provided greater protection:

> Although Pena claims on appeal that he was denied due process and due course of law by the State's failure to provide material evidence before and during trial, he does not present any argument or authority as to the protection of the Texas Constitution or how that protection differs in any way from that offered by the United States Constitution. Only three Texas cases are cited by Pena in his brief and none discuss the due course of law provision. In fact, Pena specifically argues that his case falls within the parameters of *Youngblood,* a federal due process standard. Without argument or any briefing, the majority takes it upon itself to raise the possibili-

ty of a difference in the level of protection between the Texas and United States Constitutions and proceeds to determine the expansiveness of the due course of law provision in the Texas Constitution.

What are we doing? We've been told not to reverse convictions on theories not raised on appeal or in the court below. Yet we continue to do so. And, where a party fails to argue a distinction between the Texas and United States Constitutions, the Court of Criminal Appeals routinely declines to make the argument for the party in that situation. So should we.[13]

The State filed a petition for discretionary review. In its first ground, the State asks: "Did the Court of Appeals err by reversing the trial court's decision on a legal theory not presented either to the trial court or to the Court of Appeals by the complaining party?" Under this ground, the State complained, in part, that appellant made "no argument in the Court of Appeals that the relevant provisions of the Texas Constitution should be construed differently, or that they provided a greater level of protection to the defendant, than those of the United States Constitution. Instead his entire argument [was] based upon federal authority." [14] The State further complained that the appellate court's action deprived the State of the opportunity to address the issue:

> As a result of the Court of Appeals'[s] deciding this case on an issue not presented either to the trial court or to the

9. *Id.*

10. *Id.*

11. *Id.* at 282.

12. *Id.* at 283.

13. *Id.* at 285–286 (Gray, C.J., dissenting) (citations omitted).

14. The State also contends that error was forfeited by appellant's failure to claim broader protection in the Texas Constitution at trial. We decline to address this contention at this time.

court of appeals, the State did not have an opportunity to address whether the Texas Constitution provides a greater level of protection to the defendant than does the United States Constitution, and, if it does, whether the State complied with the additional requirements of the Texas Constitution.

## II. ANALYSIS

We have previously held, and reaffirm today, that appellate courts are free to review "unassigned error"—a claim that was preserved in the trial below but was not raised on appeal.[15] In conducting such a review, however, the question becomes whether certain circumstances obligate a court to *assign* such error by ordering briefing from the parties. We recognize that many, if not most, of the types of error that would prompt *sua sponte* appellate attention need not be assigned because the error involved constitutes an obvious violation of established rules. Novel constitutional issues are a different matter.

The United States Supreme Court has recognized the desirability of avoiding the adjudication of constitutional issues when at all possible: "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable."[16] This maxim includes the Supreme Court's practice not "to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied."[17] This

restraint is exercised in part out of respect for other branches or departments of government:

[W]hen this court is called on in the course of the administration of the law to consider whether an act of Congress, or of any other department of the government, is within the constitutional authority of that department, a due respect for a co-ordinate branch of the government requires that we shall decide that it has transcended its powers only when that is so plain that we cannot avoid the duty. In such cases it is manifestly the dictate of wisdom and judicial propriety to decide no more than is necessary to the case in hand.[18]

The principle is not limited to the federal courts, but is widely recognized in state courts as well—a fact the Supreme Court observed in a case flowing into the federal system from *this* court, where we had adhered to the principle:

The ground for the discharge of the petitioner in this case, as given by the [federal] court below, was because of the opinion of that court that the anti-trust law of the State of Texas violated the Constitution of the United States, and was therefore void. The question of the validity of that act of course exists whether the case be in the state court or a hearing transferred to the Federal court by virtue of the writ of habeas corpus. It is the duty of the state court, as much as it is that of the Federal courts, when the question of the validity of a state statute is necessarily involved as being in alleged violation of any pro-

**15.** *Rezac v. State,* 782 S.W.2d 869, 870 (Tex. Crim.App.1990).

**16.** *Clinton v. Jones,* 520 U.S. 681, 690, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997)(quoting *Spector Motor Service v. McLaughlin,* 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944))(ellipsis in *Clinton* ).

**17.** *Id.* (quoting *Alabama State Federation of Labor v. McAdory,* 325 U.S. 450, 461, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945)).

**18.** *Trade Mark Cases,* 100 U.S. 82, 96, 25 L.Ed. 550 (1879).

vision of the Federal Constitution, to decide that question, and to hold the law void if it violate that instrument. But the state court is not bound to decide the constitutional question when there are other grounds for reversing a conviction under the law, upon pain of having its omission furnish a ground for Federal interference.

\* \* \*

The first circumstance stated is that the Court of Criminal Appeals did not decide, when it had the opportunity, the question of the constitutionality of the act in question.

\* \* \*

It is matter of common occurrence—indeed, it is almost the undeviating rule of the courts, both state and Federal—not to decide constitutional questions until the necessity for such decision arises in the record before the court. This court has followed that practice from the foundation of the Government, and we can see no reason for just criticism upon the action of the state court in refusing to decide the question of the constitutionality of this act, when, at the same time, it held in substance that there was no evidence upon which to sustain the conviction of the defendant upon the indictment then before it, and that therefore the judgment should be reversed.[19]

■ Of course, addressing an issue that was not originally briefed may be "necessary" because the case's outcome necessarily depends upon the issue's resolution. Nevertheless, the principle of deciding novel constitutional questions only when necessary also informs *how* courts should go about deciding those issues. When the

issue is a novel one of constitutional dimension that threatens to overturn the acts of another branch or department of government, the court should exercise special care in deliberating on the matter. The Supreme Court has recognized that, even in the appellate context, the adversarial system provides crucial safeguards to help ensure correct decision-making:

> The paramount importance of vigorous representation follows from the nature of our adversarial system of justice. This system is premised on the well-tested principle that truth—as well as fairness—is best discovered by powerful statements on both sides of the question.

\* \* \*

> The need for forceful advocacy does not come to an abrupt halt as the legal proceeding moves from the trial to appellate stage. Both stages of the prosecution, although perhaps involving unique legal skills, require careful advocacy to ensure that rights are not forgone and that substantial legal and factual arguments are not inadvertently passed over.[20]

We do not suggest that an appellate court must order briefing every time it decides to raise on its own a point of error not briefed by the parties. As we indicated earlier, some rules—constitutional or otherwise—are already firmly established through prior litigation, having already passed through the fires of adversarial testing. And rules that do not expand the reach of the federal or state constitutions can be overturned by the Legislature; although the cost of mistakes regarding those types of rules is high, a remedy exists. But a novel rule that expands the reach of a constitutional provision can

---

**19.** *Baker v. Grice,* 169 U.S. 284, 291–292, 18 S.Ct. 323, 42 L.Ed. 748 (1898).

**20.** *Penson v. Ohio,* 488 U.S. 75, 84–85, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988).

hamstring the Legislature as well as frustrate trial courts and prosecutors who relied upon the rule that was previously in effect.

■ Different treatment of these types of rules can be seen in Ohio, where, as in Texas, "nothing prevents a court of appeals from passing upon an error which was neither briefed nor pointed out by a party." [21] In response to an intermediate appellate court's *sua sponte* decision to declare a forfeiture statute unconstitutional, the Ohio Supreme Court cautioned that "out of fairness to the parties, a court of appeals which contemplates a decision upon an issue not briefed before it should ... give the parties notice of its intention and an opportunity to brief the issue." [22] In rebuking the court of appeals, Ohio's high court further remarked that "there was no such notice or opportunity for briefing given to the parties by the court of appeals. The first notice that constitutional issues were being considered was given when the court of appeals'[s] decision was released." [23] On the other hand, in a later case when a party complained that the court of appeals had improperly raised on its own the applicability of the statute of limitations, the Ohio Supreme Court disagreed, stating that its prior decision was distinguishable because "the issue decided by the court of appeals did not involve the constitutionality of a statute." [24] Of course, even when an appellate court is not obligated to order briefing on an issue it has decided to raise on its own, it may do so in its discretion.

Here, the Court of Appeals decided on its own to expand the reach of the Texas Constitution without first requesting briefing from the parties. We hold that its failure to afford the parties an opportunity to brief the issue was error.

We vacate the judgment of the Court of Appeals and remand the case to that court for proceedings consistent with this opinion.

WOMACK, J., filed a concurring opinion.

MEYERS, J., filed a dissenting opinion.

HERVEY, J., filed a dissenting opinion in which KEASLER, J., joined.

WOMACK, J., filed a concurring opinion.

Because I agree with the principle that appellate courts should give the parties notice of, and an opportunity to brief, issues that no party has raised on appeal,[*] I join the judgment of the Court.

I also agree with the principle that courts should avoid the decision of constitutional issues that are not necessary to the resolution of cases. But, because I do not agree with the Court's discussion of the relationship of that principle to the former principle (*ante* at Part II), I do not join the opinion of the Court.

MEYERS, J., filed a dissenting opinion.

Three weeks ago, this Court decided *Villescas v. State*, No. PD–0531–05, 2005 WL 327022, 2006 Tex.Crim.App. LEXIS 682 (Tex.Crim.App.2006). In that case, we

21. *State v.1981 Dodge Ram Van et al.*, 36 Ohio St.3d 168, 169, 522 N.E.2d 524, 526 (1988).

22. *Id.*

23. *Id.* The Ohio Supreme Court also found that the court of appeals erred in addressing the issue because it had not been preserved by objection at trial. *Id.* at 526–527.

24. *Browning v. Burt*, 66 Ohio St.3d 544, 564, 613 N.E.2d 993, 1008 (1993)(distinguishing *State v.1981 Dodge Ram Van*), *cert. denied sub nom.*, *St. Elizabeth Med. Ctr. v. Browning*, 510 U.S. 1111, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994).

* *See Montanez v. State*, —— S.W.3d ——, ——, 2006 WL 1083917 (Tex. Cr.App., PD–894–04, decided today) (WOMACK, J., dissenting).

granted the State's petition for discretionary review to determine whether the State's notice of its intention to enhance the defendant's primary offense was timely. However, instead of addressing the issue of timeliness, the Court undertook a federal due process analysis, deciding that the appellant's constitutional rights had not been violated by the State's notice of enhancement six days before trial.[1]

I find it ironic that, without blinking an eye, the majority today reprimands the Tenth Court of Appeals for ruling on a constitutional question not briefed by the parties when that is the very action it took in resolving *Villescas*. In the instant case, the majority notes that Appellant's contention on appeal was that the trial court "erred in admitting testimony of test results concerning alleged marijuana when this material evidence and the original file concerning this evidence had been destroyed or lost prior to trial and without independent testing." In considering this claim, the court of appeals addressed whether the Texas Constitution's Due Course of Law Clause afforded Appellant greater protection than the United States Constitution's Due Process Clause. The majority holds that the court of appeals erred in failing to allow the parties to brief this particular issue.

At trial, defense counsel argued in his motion to suppress that the admission of the test results and the testimony surrounding them would violate his due process rights guaranteed by both the United States Constitution and the Texas Constitution. Thus, the issue of a violation of Appellant's rights under the Due Course of Law provision was raised and preserved at trial. Furthermore, the Tenth Court of Appeals has now addressed the relationship between the respective due process clauses of the federal and state constitutions for the purposes of this case, resolving that the Texas Due Course of Law provision provides greater protection with regard to the loss of "evidence that has apparent exculpatory value." *Pena v. State*, 166 S.W.3d 274, 281 (Tex.App.-Waco 2005). As this issue is now properly before us, and no statute or caselaw precedent requires us to send the case back to the court of appeals, it violates common sense and judicial economy to remand it.[2] I respectfully dissent from the Court's judgment.

**Exhibit "A"**

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

NO. PD–0531–05

FRANCISCO VILLESCAS, Appellant

v.

THE STATE OF TEXAS

ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE EIGHTH COURT OF APPEALS EL PASO COUNTY

I believe that the majority has somewhat misstated the ground in the petition

1. As a matter of context, I have attached as Exhibit "A" a copy of the concurring opinion which I prepared but never issued in *Villescas*.

2. It appears that Judge Hervey has made up her mind that the Due Course of Law Clause in the Texas Constitution does not offer greater protection than the Due Process Clause of the United States Constitution. Dissenting Op., at 146 ("The Tenth Court of Appeals read into this state constitutional provision a specific right, broader than that provided by its federal counterpart in the United States Constitution's due process clause, that had gone completely unnoticed for over 150 years.") Judge Hervey even cites Presiding Judge McCormick's concurrence in *Jimenez v. State* as support for her position. 32 S.W.3d 233, 242 (due process clause in federal constitution and due course of law provision in state constitution mean the same thing).

for discretionary review and incorrectly interpreted the law surrounding the issue raised. Relying on the 1962 United States Supreme Court case *Oyler v. Boles*,[3] the majority concludes that the State's enhancement notice was timely because it satisfied federal due process requirements by alleging the enhancement before the punishment phase of trial. Not only does the majority overstate the reach of *Oyler*, it applies it to the dissimilar circumstances of *Villescas v. State*,[4] drawing an incongruent analogy. Furthermore, in reaching its decision, the Court cites the fact that Appellant ultimately received a continuance as evidence that the State's notice of its intention to enhance the primary offense was timely. Lastly, the majority holds that all claims involving the timeliness of the State's enhancement notice, whether alleging a constitutional violation or not, should be subject to constitutional standards when conducting a harm analysis. I would also reverse the Court of Appeals, but for different reasons.

## BACKGROUND

### Trial Court and Court of Appeals

Appellant was charged by indictment with attempted sexual assault. Six days before trial, and nine days before the commencement of the punishment hearing, the State filed a "Notice of Enhancement," in which it expressed its intent to seek an enhanced sentence under section 12.42(a)(3) of the Texas Penal Code based on Appellant's prior felony conviction. Defense counsel twice objected to the State's enhancement notice. Upon his first objection prior to jury selection, the trial court deferred argument on the issue until the parties reached the punishment phase of the trial. Upon his second objection at the beginning of the punishment hearing, the trial court withheld ruling and entered a plea of not true to the enhancement allegation on Appellant's behalf. During the punishment phase, Appellant was confused about the process by which his fingerprints were compared to prior judgments, and the trial court recessed the case until the following week to allow time for explanation. When the trial court resumed the proceeding, defense counsel explained that Appellant now understood the fingerprint-comparison procedure. Appellant maintained his plea of "not true" to the enhancement paragraph, but stipulated to the prior convictions, including the prior felony conviction alleged for enhancement. The trial court found the enhancement allegation to be true and sentenced Appellant to eighteen years' imprisonment, a sentence within the range of punishment for a second-degree felony.[5]

One issue before the Eighth Court of Appeals in *Villescas* was whether the trial court erred in allowing an enhanced punishment because the State failed to provide timely notice that it would seek the enhancement. Relying on precedent that a defendant is entitled to notice of a prior

3. 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).

4. No. 08–03–00131–CR, 2005 WL 327022, 2005 Tex.App. LEXIS 1118 (Tex.App.-El Paso Feb. 10, 2005, pet. granted).

5. Attempted sexual assault is a third-degree felony. Under the Texas Penal Code, "[i]f it is shown ... on the trial of a third-degree felony that the defendant has been once before con-

victed of a felony, on conviction he shall be punished for a second-degree felony." TEX. PENAL CODE § 12.42(a)(3) (Vernon Supp.2004–05). While the range of punishment for a third-degree felony is two to ten years' imprisonment, the range for a second-degree felony is two to twenty years. *See* TEX. PENAL CODE § 12.34(a) and TEX. PENAL CODE § 12.33(a), respectively.

conviction being used for enhancement[6] and on the presumption among several courts of appeals that ten days before trial is reasonable notice,[7] the Court of Appeals determined that the State's notice was untimely. The Court of Appeals explained that the timeliness of notice should be measured within the time frame prior to trial, since the purpose of the notice requirement was to aid the accused in preparation for a trial on the issue. It also reasoned that the State's notice of six days was insufficient because there was evidence that Appellant was surprised and unprepared in his defense with respect to the alleged prior convictions. Having determined that the State's notice of intent to seek an enhanced punishment was untimely, the Court of Appeals concluded that Appellant suffered substantial harm[8] in the form of a sentence outside the ten-year maximum for a third-degree felony due to the enhancement.

## ANALYSIS

In its petition for discretionary review, the State argues that the Court of Appeals erred by failing to consider all of the particular circumstances of this case in concluding that the State's enhancement notice was not timely. In particular, the State contends that the Court of Appeals did not take into account the fact that the trial court remedied Appellant's confusion regarding the fingerprint-comparison procedure by granting a one-week continuance. The State's position is that

the continuance cured the only cited adverse consequence of the timing of the notice. The State does not expressly advance or rely on a due process argument in claiming that its notice was timely. Similarly, rather than undertaking a due process analysis, the Court of Appeals evaluated the circumstances of the case in relation to decisions from this Court and the lower courts of appeals in holding that the State's notice was untimely. Instead of staying focused on the question granted in the petition for discretionary review— whether the State's notice of intent to enhance was timely—the majority makes this a case about federal due process.

Although due process is implicated in this case and others involving the timeliness of the State's notice of enhancement, this is not the issue raised by the State in its petition for discretionary review. In holding that the State's notice of enhancement was sufficient, the majority relies almost exclusively on *Oyler*, the United States Supreme Court case establishing that due process does not require advance notice that the trial for the substantive offense will be followed by an accusation that the defendant is an habitual offender. 368 U.S. at 453, 82 S.Ct. 501; *see Almendarez–Torres v. United States*, 523 U.S. 224, 244, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998); *Parke v. Raley*, 506 U.S. 20, 28, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). In *Oyler*, the Supreme Court determined that due process *may* be satisfied even though the State does not give its notice of enhancement until the punishment phase of

---

6. *Brooks v. State*, 957 S.W.2d 30 (Tex.Crim. App.1997).

7. *See, e.g., Sears v. State*, 91 S.W.3d 451, 455 (Tex.App.-Beaumont 2002, no pet.), in which the court of appeals said that notice is presumptively reasonable if given at least ten days before trial, because this time frame is considered sufficient in a number of other

instances (citing TEX.CODE CRIM. PROC. ANN. art. 1.051(e) (Vernon Supp.2002); TEX.CODE CRIM. PROC. ANN. art. 28.10(a) (Vernon 1989); *Campbell v. State*, 456 S.W.2d 918, 920 (Tex.Crim. App.1970); *Chimney v. State*, 6 S.W.3d 681, 694 (Tex.App.-Waco 1999)).

8. *See* TEX. RULE APP. PROC. 44.2(b).

trial, as long as the defendant has a reasonable opportunity to respond to the recidivist charge. 368 U.S. at 452, 82 S.Ct. 501 (explaining that a defendant must receive "reasonable notice and an opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense."). The defendants in *Oyler* had reasonable notice because the State informed them of its intention to seek enhancement at the start of the punishment phase, and they had an opportunity to be heard because they acknowledged in open court that they were the same persons who had previously been convicted. Thus, no due process violation occurred. Indeed, the Supreme Court made clear that the petitioners' failure to object or seek a continuance on the ground that they had not received adequate notice was the reason they were estopped from later asserting the claim that they had not been given a fair opportunity to respond to the allegations used for enhancement. *Id.* at 453, 82 S.Ct. 501.

The facts surrounding Appellant's case are dissimilar. Appellant's attorney twice lodged objections to the State's notice of intent to seek an enhanced sentence, and it was the trial judge who continued to defer ruling on this matter. Furthermore, Appellant persisted in his plea of not true to the enhancement paragraphs. Most notably, the defendants in *Oyler* were apprised of the enhancements by a separate information after the conclusion of trials in which their sentences were deferred. The West Virginia statute at issue in *Oyler* provided the defendants with a separate jury trial on the issue of identity if they denied being the person in the information alleging the enhancement or just remained silent, whereas Appellant was sentenced by the same jury that decided his guilt. *Oyler* entertained a particular set of facts

and did not speak to scenarios in which a defendant contests the State's notice of intent to seek enhancement and indicates that he needs more time within which to prepare, and it did not address the situation of a unitary trial in which the same jury decides guilt and punishment in two separate phases. *Oyler* was a case in which the defendants basically procedurally defaulted their ability to challenge the enhancement, and it effectively left room for the situation in which notice before the punishment phase would not satisfy due process.

Our role in the instant case is not to determine whether Appellant's due process rights were abridged, but to decide whether the State's filing of its notice to enhance punishment was timely. The Supreme Court's holding in *Oyler* does not stand for the proposition that notice of intent to enhance is *timely* as long as it is received prior to the punishment proceeding, as the majority suggests. The majority basically dismisses the timeliness issue by saying that the State's notice, which was given six days before the beginning of trial, was "substantially more than the notice minimally required to satisfy due process." Majority Opinion at *8. Again, the majority misinterprets *Oyler* and confuses the issues of timeliness and due process by treating them as if they were one and the same. If *Oyler* stood for the proposition that timeliness requirements were satisfied as long as the State gave notice at the beginning of the punishment phase, then an entire jurisprudence would not exist. Indeed, it is noteworthy that *Oyler* has never been cited in any Texas case dealing with the timeliness of the State's notice of enhancement, in light of the fact that its due process holding would have been applicable to this issue beginning with our 1997 decision in *Brooks v. State,* which allowed the State to give notice of en-

hancement outside of the indictment.[9] The majority should have focused specifically on the question of timeliness, rather than delving into a constitutional analysis not employed by the Court of Appeals, in which it conflates notice and timeliness. *See Rich v. State*, 160 S.W.3d 575, 577 (Tex.Crim.App.2005) (explaining that since the appellant did not contest the Court of Appeals' application of the standard for nonconstitutional error, we would assume that it was the proper rule).

In failing to address the issue presented for review, the majority misses the opportunity to provide guidance to both the lower courts, which have increasingly encountered this issue, and the State, as to what constitutes timeliness in seeking an enhanced sentence. The message that the majority sends is that as long as the State files its notice of enhancement before punishment, that notice is timely. The majority has essentially done away with the issue

of timeliness by substituting due process,[10] and it has created a precedent that could make every notice issue, including a motion to quash, one of constitutional dimension.

The Court of Appeals applied the correct procedures in evaluating the merits of Appellant's claims, although it reached the wrong conclusion. First, the Court of Appeals examined whether the State's notice was timely, given the circumstances of the case. Second, only after having determined that the State's notice was untimely did it undertake a harm analysis. Timeliness must be measured at the time the State files its notice, or expresses its intention, to seek an enhanced sentence, and it makes sense to require that the notice be before trial. We said in *Brooks*[11] that a defendant is entitled to notice of the State's intention to enhance, and there is a presumption among the lower courts that ten days prior to trial is reasonable.[12]

9. Texas courts, including the Court of Criminal Appeals, have relied extensively on *Oyler's* equal protection holding that "the State's decision to prosecute may not be deliberately based upon unjustifiable standards such as race, religion, or other arbitrary classification." *Oyler*, 368 U.S. at 453, 82 S.Ct. 501. *See also Green v. State*, 934 S.W.2d 92, 103 (Tex.Crim.App.1996); *County v. State*, 812 S.W.2d 303, 308 (Tex.Crim.App.1989); *Satterwhite v. State*, 726 S.W.2d 81, 84 (Tex.Crim. App.1986).

10. Notably, we could have decided the recent case *McNatt v. State*, 188 S.W.3d 198 (Tex. Crim.App.2006), differently based on the majority's decision here. In *McNatt*, the court of appeals held that the appellant was denied due process because on the day of the punishment trial, the State, through a motion for reconsideration, used a conviction that was alleged solely as a jurisdictional enhancement in the indictment to enhance his sentence. 152 S.W.3d 645 (Tex.App.-Texarkana 2004, pet. granted). The court of appeals also agreed with the trial court that the State's letter notice of enhancement, sent eleven days before trial, was untimely. Here in *Villescas*,

the majority says that due process is the only relevant consideration and that it is satisfied if notice of enhancement is given any time before punishment and the defendant has a reasonable time within which to respond. If so, then the Court could have held that the defendant in *McNatt* was not entitled to a new penalty hearing since due process was satisfied by the state's giving some notice before the punishment hearing. Under the majority opinion in the case before us, the separate issue of the timeliness of the notice is of no consequence. In fact, the State would be prudent to ask for rehearing in *McNatt* in order to avoid another punishment hearing, since due process is now the only violation that you can have.

11. 957 S.W.2d at 33 (holding that "prior convictions used as enhancements must be pled in some form, but they need not be pled in the indictment—although it is permissible and perhaps preferable to do so.").

12. *Sears*, 91 S.W.3d at 455 (explaining that ten days' notice is considered sufficient in a number of instances, including the time ap-

Proper notice constitutes a "description of the judgment of former conviction that will enable [the accused] to find the record and make a preparation for a trial of the question whether he is the convict named therein." *Hollins v. State*, 571 S.W.2d 873, 875 (Tex.Crim.App.1978) (citing *Morman v. State*, 127 Tex.Crim. 264, 75 S.W.2d 886 (1934)). Proper notice also affords the defendant the opportunity to determine if the prior offenses are being correctly characterized by the State, in terms of their substance and finality, and it gives an attorney the opportunity to voir dire potential jurors on punishment issues. It is common sense to require the State to give its notice of enhancement before the commencement of proceedings, especially when there is a unitary trial.

The lower courts of appeals have addressed the issue of timeliness, and their decisions offer some direction in evaluating Appellant's claim. Notably, this jurisprudence on timeliness has evolved in the lower courts as a result of our decisions in *Ex parte Patterson*, 740 S.W.2d 766 (Tex. Crim.App.1987), in which we allowed the intent to seek a deadly weapon finding to be pleaded outside of the indictment, and subsequently in *Brooks*, in which we allowed the intent to seek sentence enhancement to be pleaded outside of the indictment. While the Waco appellate court has

adopted a bright-line rule requiring ten days' notice of the State's intention to enhance before the guilt phase of trial,[13] other courts have considered the facts of each case, including how close to trial the defendant was informed of the State's decision to seek enhancement and whether the defendant expressed surprise or the need for additional time in which to prepare. The instant case gives this Court an opportunity to provide guidance to the lower courts as to how to evaluate the timeliness of the State's notice of enhancement. Because the facts of every case are different, I believe such claims should be addressed by evaluating the totality of the circumstances, rather than mandating a bright-line rule.

Based on the totality of the circumstance of this case, it seems that the State was not timely in providing notice for the following reasons. First, the notice was only six days before trial, including four business days and two weekend days. Notice of enhancement, like notice in other instances, should be given before trial in order to be timely, and a ten-day presumption, although not definitive, provides a starting point for our analysis that must be considered in relation to the other facts of the case. *See Fairrow*, 112 S.W.3d 288 (holding that the State's oral admonishment on the day of trial did not afford the

pointed counsel is allowed to prepare; the time a defendant is given, upon request, to respond to an amended indictment; and the time that a probationer is entitled to be served with a motion to revoke). In addition to the Beaumont court of appeals, the Fort Worth, El Paso, Texarkana, and Dallas courts of appeals have all observed that ten days' notice is presumptively reasonable. *See, e.g.*, *Williams v. State*, 172 S.W.3d 730, 734 (Tex.App.-Fort Worth 2005, pet. ref'd); *Villescas*, No. 08-03-00131-CR, 2005 WL 327022, at *2, 2005 Tex.App. LEXIS 1118, at *6; *Lewis v. State*, No. 07-04-0386-CR, 2005 WL 1201009, at *1, 2005 Tex.App. LEXIS

3940, at *4 (Tex.App.-Amarillo May 18, 2005, no pet.) (not designated for publication); *McNatt*, 152 S.W.3d at 651; *Fairrow v. State*, 112 S.W.3d 288, 294 (Tex.App.-Dallas 2003, no pet.).

**13.** *See Hackett v. State*, 160 S.W.3d 588 (Tex. App.-Waco 2005, pet. ref'd) (holding that the State's notice of its intent to use prior convictions for enhancement was a *de facto* amendment of the indictment, requiring a minimum of ten days' notice under Article 28.10(a) of the Texas Code of Criminal Procedure).

defendant proper notice of intent to enhance punishment); *Hudson v. State,* 145 S.W.3d 323 (Tex.App.-Fort Worth 2004, pet. ref'd) (holding that notice was unreasonable when given during the guilt phase of trial six days before the punishment phase began); *Cf. Fugate v. State,* —— S.W.3d ——, No. 2–04–548–CR, 2006 WL 601698, 2006 Tex.App. LEXIS 1948 (Tex. App.-Fort Worth 2006) (holding that the State's notice of seven days before trial was sufficient because the appellant was aware that the State had pen packets on his prior convictions and could use them for enhancement); *Castilla v. State,* No. 05–01–01776–CR, 2002 WL 31261741, 2002 Tex.App. LEXIS 7263 (Tex.App.-Dallas Oct.10, 2002, no pet.) (not designated for publication) (holding that State gave "ample notice" by filing ancillary pleadings seven days before trial).

Second, defense counsel objected at both the guilt stage and the punishment stage of trial, saying that the notice was untimely and indicating that he needed additional time in which to prepare. *See Sears,* 91 S.W.3d 451 (considering the attorney's objection to the enhancement in holding that notice given the Friday before the Monday trial began was untimely); *Cf. Williams v. State,* 172 S.W.3d 730 (Tex.App.-Fort Worth 2005, pet. ref'd) (holding that eight days' notice before trial was reasonable based in part on the absence from the record of any surprise or lack of preparation on the part of the defendant). Although the trial judge granted a continuance during the punishment phase because he observed Appellant's confusion with the fingerprint-comparison procedure, this recess did not have the effect of transforming the State's untimely notice into timely notice. Third, Appellant maintained his plea of not true to the enhancement paragraph throughout the proceedings. *See*

*Barnes v. State,* 152 S.W.3d 144 (Tex.App.-Dallas 2004, no pet.) (holding that notice seven days before trial was reasonable where defendant said that he had ample notice and pleaded true to the enhancement paragraphs). Appellant never indicated that he believed the notice was timely, and he preserved this issue for review on appeal. A consideration of the aforementioned circumstances reveals that the State's notice was not timely as measured from the date that it first gave notice and defendant first objected.

Having established that the State's notice was untimely, it is necessary to determine whether the trial court committed reversible error. The Court of Appeals relied on Texas Rule of Appellate Procedure 44.2(b) in conducting its harm analysis. The majority asserts that the Court of Appeals should have used the constitutional standard for its harm analysis because the notice requirement flows from the fundamental precepts of due process and due course of law. Again, while there may be a constitutional component to the claim that the State did not provide timely notice of its intention to enhance, Appellant did not advance such a claim. On appeal, the Court of Appeals considered the issue "whether the trial court erred in allowing an enhanced punishment because the State failed to provide timely notice that it would seek to enhance punishment." *Villescas,* No. 08–03–00131–CR, 2005 WL 327022, at *1, 2005 Tex.App. LEXIS 1118, at *1. Since Appellant did not allege a due process violation, the Court of Appeals correctly applied the nonconstitutional standard for reversible error to its harm analysis. The court of appeals in *Fairrow* undertook a similar approach. After concluding that the State's notice of intent to enhance was not timely, it explained that since the appellant argued that the sentencing was outside the range allowed by

statute, it would "conduct the harm analysis of statutory errors as a species of 'other errors' under rule 44.2(b)." *Fairrow*, 112 S.W.3d at 295. The court of appeals declined to use the constitutional standard under Rule 44.2(a) because "Appellant does not argue that the trial court's error violated a constitutional provision." *Id.* On the other hand, the error in *Sears* was constitutional because the appellant had claimed that "the trial court violated his due process right to notice under the Sixth and Fourteenth Amendments to the United States Constitution when it allowed the State to present enhancement evidence over [his] objection that he had received inadequate notice of the State's intent to offer the evidence." 91 S.W.3d at 453. Therefore, the *Sears* court of appeals applied Rule 44.2(a) in conducting its harm analysis. In the instant case, although I agree with the Court of Appeals that the State's notice was untimely, I believe that the trial court's decision to recess the court gave defense counsel time to prepare for his defense against the prior conviction used for enhancement. Thus, whatever harm Appellant suffered as a result of the State's untimely notice was cured by the recess, even though it was not granted in response to defense counsel's objection.

## CONCLUSION

Although *Oyler* is instructive in determining whether Appellant's due process rights were violated based on the State's notice of enhancement, the case is not conclusive as to the question of when notice is timely. *Oyler* does make clear that notice before the punishment phase of trial, rather than the guilt phase, may satisfy due process; however, it is careful to disclaim that this will satisfy due process in all cases, and it does not mention the particular issue of timeliness of notice. Our own caselaw is more instructive in determining whether notice is timely in a given situation. Based on the totality of the circumstances, I would have affirmed the Court of Appeals' decision that the State's notice was untimely. However, after undertaking a Rule 44.2(b) analysis of Appellant's nonconstitutional claim, I would have concluded that the untimely notice was cured by the trial court's one-week recess. Given that the majority has conflated issues of timeliness and notice in an analysis that unnecessarily relies on due process and that is unresponsive to the issue granted in the State's petition for discretionary review, I can only concur in its decision.

HERVEY, J., filed a dissenting opinion in which KEASLER, J., joined.

Tex. Const., Art. I, § 19, provides that: No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land.

The Tenth Court of Appeals read into this state constitutional provision a specific right, broader than that provided by its federal counterpart in the United States Constitution's due process clause,[1] that had gone completely unnoticed for over 150 years. *See Pena v. State*, 166 S.W.3d 274, 278–81 (Tex.App.-Waco 2005). This Court decides that the Tenth Court can make this interpretation under its authority to address "unassigned error" but not without first giving the parties an opportunity to be heard. The Court states that appellate courts are authorized to review

---

1. *But see Jimenez v. State*, 32 S.W.3d 233, 242 (Tex.Cr.App.2000) (McCormick, P.J., concurring) (due process clause in federal constitution and due course of law provision in state constitution mean the same thing).

"unassigned error" which is defined as "a claim that was preserved in the trial below but was not raised on appeal." *Pena v. State,* at 136, (delivered this date) *citing Rezac v. State,* 782 S.W.2d 869, 870 (Tex. Cr.App.1990) (once appellate jurisdiction is properly invoked, limits of issues that appellate court may address "are set only by that court's discretion and any valid restrictive statute"); *but see* Tex.R.App. Proc. 38.1(e) (requiring an appellant's brief to "state concisely all issues or points presented for review" which appellate courts should treat "as covering every subsidiary question that is fairly included"); Tex. R.App. Proc. 47.1 (requiring appellate court to hand down written opinion that "addresses every issue raised").[2]

The Court's opinion, however, declines to address the State's claim that the state constitutional issue decided by the Tenth Court was not "preserved in the trial below." *See Pena,* at 135 n. 14 (declining "to address this contention at this time"); *see also Pena,* 166 S.W.3d at 283–86 (Gray, J., dissenting) (state constitutional issue not preserved in the trial court). I would address this claim and decide that the state constitutional claim decided by the Tenth Court was not "preserved in the trial below" for the reasons set forth in the dissenting opinion in the Court of Appeals. *See id.* Though appellant generally mentioned the state constitution in the trial court proceedings, he did not specifically indicate how the state constitutional due course of law provision differed from its federal counterpart so as to inform the trial court and the other party of the need to respond to this claim. *See id.; see also*

Tex.R.App. Proc. 33.1(a)(1) (to preserve error for appellate review, complaining party must make objection stating the grounds "with sufficient specificity as to make the trial court aware of the complaint"). This case should be controlled by our decision in *Hailey v. State,* 87 S.W.3d 118, 121–22 (Tex.Cr.App.2002).

I respectfully dissent.

---

2. It is also doubtful that Tex.R.App. Proc. 2 is authority for the Tenth Court to *sua sponte* address the state constitutional question since this does not "order a different procedure." Rule 2 provides:

> On a party's motion or on its own initiative an appellate court may—to expedite a deci-

sion or for other good cause—suspend a rule's operation in a particular case and order a different procedure; but a court must not construe this rule to suspend any provision in the Code of Criminal Procedure or to alter the time for perfecting an appeal in a civil case.