Reversed and Remanded and Opinion filed June 25, 2009








Reversed and
Remanded and Opinion filed
June 25, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00113-CV

____________

 

IN THE INTEREST OF C.M.D., A CHILD

 



 

On Appeal from the 328th
District Court

Fort Bend County, Texas

Trial Court Cause No. 07-CV-159,915

 



 

O P I N I O N

Appellant LDS Family Services appeals the trial court=s sua sponte
determination that section 161.002(b) of the Texas Family Code is
unconstitutional under the Texas and United States Constitutions.  Because we
determine the trial court=s ruling is not supported by the evidence
and circumstances of this case, we reverse and remand.

BACKGROUND








On October 19, 2007, LDS, a private adoption agency,
brought an adoption petition regarding C.M.D., who was born in January 2007. 
The mother had submitted an affidavit of relinquishment of parental rights and
provided another affidavit with information about the father.  According to the
mother, she met the father at a bar while visiting her sister in California. 
They became intimate and dated for several months.  The mother then returned to
Texas and discovered she was pregnant.  She contacted the father, who was
surprised and noncommittal about any future plans.  He did not send any gifts
or money.  The mother called again after having the baby.  The father said he
was visiting his mother in the Dallas area and asked if they could come and see
the baby.  The mother agreed, but the father never showed up.  She tried to
call his cell phone a few days later, but it was out of service, as was another
phone number he had given her.  She has not heard from the father since,
despite her cell phone number remaining unchanged, and he has never sent any
gifts or financial support.  After attempting single parenthood for eight
months, the mother decided to give the baby up for adoption.

LDS requested that the trial court terminate the father=s parental rights
under Family Code section 161.002(b) because he had not registered with the
Texas paternity registry.  Tex. Fam.
Code Ann. ' 161.002(b) (Vernon Supp. 2008).  The
Family Code establishes a paternity registry and provides that if an alleged
father does not (a) register before the child is born or within thirty-one days
after birth or (b) take other steps to protect his parental rights, those
rights can be terminated without notice, service, or any attempt to locate
him.  See id. '' 160.402, 160.404, 161.002(b), (c), (c-1),
(d) (Vernon 2002 & Supp. 2008).  The father was not present during the
termination proceedings, and no ad litem was appointed to represent his
interests.








The trial court refused to apply the statute and terminate
the father=s parental rights, instead declaring sua sponte that
the statute was unconstitutional under the state and federal constitutions
based on due process and equal protection grounds.  The trial court ruled the
statute unconstitutional because it does not require (a) due diligence to
locate the alleged father, (b) service of process on the alleged father, (c)
appointment of an attorney ad litem to represent the alleged father=s interests, or
(d) a best interest finding.  The trial court also found that the statute
encourages default of alleged fathers and promotes fraud by allowing mothers to
withhold information regarding the location of alleged fathers.[1]

The trial court refused to terminate either parent=s parental rights,
and though C.M.D. has been with his adoptive parents since LDS filed the
adoption petition, his legal status is unsettled.  LDS now appeals, arguing
that the trial court erred in finding that the paternity registry statute is
unconstitutional.  LDS emphasizes that the statute is designed for situations exactly
like this in which the putative father appears to have no interest in the
child.  It argues that the statute gives a putative father the opportunity to
protect his rights while serving the important state interest of facilitating
early and legally secure adoptions.

JURISDICTION








Before we address the trial court=s analysis, we
first examine our jurisdiction to hear this appeal.  See M.O. Dental Lab v.
Rape, 139 S.W.3d 671, 673 (Tex. 2004) (stating that appellate court has a
duty to assess its own jurisdiction sua sponte).  Civil Practice and Remedies
Code section 37.006(b) provides that the attorney general must be notified Aif the statute . .
. is alleged to be unconstitutional.@  Tex. Civ. Prac. & Rem. Code Ann. ' 37.006(b) (Vernon
2008).  Failure to do so deprives the trial court, and therefore this court, of
jurisdiction.  See Commerce Indep. Sch. Dist. v. Hampton, 577 S.W.2d
740, 741 (Tex. Civ. App.CEastland 1979, no writ).  It is unclear if
section 37.006(b) applies in this case, but we need not resolve that issue here
because even if it does, the notice requirement was met.  After we raised this
jurisdictional issue with the parties, LDS=s counsel filed a
post-submission brief with an affidavit and two letters showing she notified
the attorney general=s office of this case (including a
telephone call and sending copies of the trial court=s order and
findings of fact and conclusions of law, two relevant cases, a law review article,
and LDS=s appellate
brief).  We can properly consider this evidence as it is necessary for us to
make our jurisdictional determination.  See Tex. Gov=t Code Ann. ' 22.220(c) (Vernon 1988) (AEach court of
appeals may, on affidavit or otherwise, as the court may determine, ascertain
the matters of fact that are necessary to the proper exercise of its
jurisdiction.@); see also Mellon Serv. Co. v. Touche Ross &
Co., 946 S.W.2d 862, 863B64 (Tex. App.CHouston [14th
Dist.] 1997, no writ) (considering affidavits attached to motion to dismiss
appeal for lack of jurisdiction).  We determine LDS=s evidence
establishes that any notice required under section 37.006(b) was given. 
Therefore, we have jurisdiction to consider this appeal.

ANALYSIS

We next consider whether the trial court had the authority
to declare the statute unconstitutional sua sponte.  In Doe 2, the trial
court sua sponte declared unconstitutional the Texas statute providing a bypass
to the requirement for a minor to obtain an abortion, and the Texas Supreme
Court held that the trial court had no authority to do so.  See In re Doe 2,
19 S.W.3d 278, 284 (Tex. 2000).  The court explained:

We have previously cautioned that the constitutionality of a statute
should be considered only when the question is properly raised and such
determination is necessary and appropriate to a decision in the case.  The
presumption is that a statute enacted by our Legislature is constitutional, and
attacks on that presumption should generally be raised as an affirmative
defense to enforcement of the statute.  In the absence of an appropriate
pleading raising the issue of unconstitutionality, the trial court is generally
without authority to reach the issue.








Id. (emphasis
added).  In support of its statement that the trial court is generally without
authority to reach the issue, as opposed to an absolute rule against doing so,
the supreme court cited this court=s opinion in Houston
Chronicle Publishing Co. v. City of Houston, 531 S.W.2d 177 (Tex. Civ. App.CHouston [14th
Dist.] 1975), writ ref=d n.r.e., 536 S.W.2d 559
(Tex. 1976).  See Doe 2, 19 S.W.3d at 284 n.39 (citing Houston
Chronicle).  In that case, we held that a sua sponte constitutional
determination was appropriate based on the importance of the statute at issue
and its impact on Texas citizens.  Houston Chronicle, 531 S.W.2d at
182.  LDS argues that we should apply the Houston Chronicle rationale in
this case because of the importance of the State=s interest in
protecting the integrity of the adoption process and of resolving C.M.D.=s legal status as
soon as possible.  We agree with LDS and determine that the trial court had
authority in this case to consider the issue of constitutionality of the
statute sua sponte.

The trial court=s judgment and
subsequent findings of fact and conclusions of law did not specify whether it
was finding the statute unconstitutional on its face or only as applied to the
father.  Therefore, we will consider both types of analysis.  A statute is
unconstitutional as applied when its application to the litigant deprives him
of a constitutional right.  See Tex. Workers= Comp. Comm=n v. Garcia, 893 S.W.2d 504,
518 n.16 (Tex. 1995).  A facial constitutional challenge requires a showing
that a statute is always unconstitutional in every application.  See id.
at 518.  Thus, for a statute to be facially, and therefore always,
unconstitutional, it must also be unconstitutional as applied to the individual
at issue.  See id.; Santikos v. State, 836 S.W.2d 631, 633 (Tex.
Crim. App. 1992); Rodriguez v. State, 47 S.W.3d 86, 88 (Tex. App.CHouston [14th
Dist.] 2001, pet. ref=d).[2]








Courts are to presume that a statute is constitutional and
should not reach a constitutional issue unless absolutely required.  See
Pena v. State, 191 S.W.3d 133, 136 (Tex. Crim. App. 2006) (A>If there is one
doctrine more deeply rooted than any other in the process of constitutional
adjudication, it is that we ought not to pass on questions of constitutionality
. . . unless such adjudication is unavoidable.=@ (quoting Clinton
v. Jones, 520 U.S. 681, 690 (1997))); Walker v. Gutierrez, 111
S.W.3d 56, 66 (Tex. 2003) (AWe begin our analysis by presuming the
statute is constitutional.@); Meshell v. State, 739 S.W.2d
246, 250 (Tex. Crim. App. 1987) (noting court=s Areluctance to
decide constitutional questions unless absolutely necessary@).  Further,
courts should decide constitutional issues narrowly based on the precise facts
of the case, not speculative or hypothetical injuries.  See Pena, 191
S.W.3d at 136 (following U.S. Supreme Court practice Anot >to formulate a
rule of constitutional law broader than is required by the precise facts to
which it is to be applied=@ (quoting Clinton,
520 U.S. at 690)); Tex. Dep=t of Family &
Protective Servs. v. Dickensheets, 274 S.W.3d 150, 155 (Tex. App.CHouston [1st
Dist.] 2008, no pet.) (AFacial invalidity cannot be premised on >hypothetical facts
that have not yet arisen.=@ (quoting Tex.
Boll Weevil Eradication Found., Inc. v. Lewellen, 952 S.W.2d 454, 463 (Tex.
1997))); Valero RefiningBTex. L.P. v. State, 203 S.W.3d 556,
563 (Tex. App.CHouston [14th Dist.] 2006, no pet.) (rejecting
constitutional challenge based on Ahypothetical
analysis@ and noting
appellant did not bring forth sufficient record to show the facts surrounding
his conduct to support a constitutional violation).  A statute cannot be
unconstitutional based only on harm to another; there must be an actual injury
to the litigant in the present case.  See Santikos, 836 S.W.2d at 633 (A[I]t is incumbent
upon the [appellant] to show that in its operation the statute is
unconstitutional as to him in his situation; that is may be unconstitutional as
to others is not sufficient.@ (internal quotation marks omitted)); Meshell,
739 S.W.2d at 205 (ABefore a court decides an issue involving
the constitutionality of a statute, it must first assure itself that the party
raising such a claim has presently been injured by the statute.@); Ex Parte
Dave, 220 S.W.3d 154, 156 (Tex. App.CFort Worth 2007,
pet. ref=d) (AThat the statute
may be unconstitutional as applied to others is insufficient to support a
facial challenge.@).

The only evidence we have in this case to assess a possible
constitutional violation to the father is as follows:

1.       His name (provided by the mother).








2.       The mother=s affidavit that she told the father of both the
pregnancy and birth, he has not provided any gifts or support, he did not visit
the baby after stating that he would, his old phone numbers are no longer in
service, and her phone number has not changed.

3.       The father did not register in the
paternity registry.

4.       The father was not served, and LDS made no
independent effort to find him.

Based
on this evidence, we cannot agree with the trial court=s determination
that a constitutional violation has been established.  An unwed father does not
automatically have full constitutional paternal rights by virtue of a mere
biological relationship.  See Lehr v. Robertson, 463 U.S. 248, 261B62 (1983); In
re J.W.T., 872 S.W.2d 189, 198 (Tex. 1994).  Rather, he must, early in the
child=s life, take some
action to assert those rights.  See Lehr, 463 U.S. at 261B62; In re
J.W.T., 872 S.W.2d at 198.








Based on the mother=s affidavit, she
called to tell the father that she was pregnant and then again after she had
the baby, but he offered no assistance, never contacted her again, and
disconnected his phone numbers.  If the father had no intent to assert his
parental rights, he could not have suffered a due process or equal protection
violation based on a deprivation of those rights.  The mother=s affidavit evidence
is uncontroverted, but even if the trial court did not credit it, that leaves
no evidence one way or the other about the father=s knowledge,
circumstances, or desires.  An absence of evidence cannot overcome the
presumption of constitutionality.  See Valero, 203 S.W.3d at 563
(rejecting constitutional challenge because appellant did not bring forth
evidence regarding his circumstances); see also Walker, 111
S.W.3d at 66 (stating we are to presume statute is constitutional); cf.
Atmos Energy Corp. v. Abbott, 127 S.W.3d 852, 857 (Tex. App.CAustin 2004, no
pet.) (AA court cannot
pass on the constitutionality of a statute unless the facts have matured,
forming the concrete basis against which the statute may be applied@). Unlike other
reported cases challenging the constitutionality of paternity registry
statutes, we have no complaining father.[3] 
That he (or another father) could possibly be aggrieved is not a proper basis
to declare the paternity registry statute unconstitutional in this case, either
as applied or on its face.  See M.V.S. v. V.M.D., 776 So. 2d 142, 145,
151 (Ala. Civ. App. 1999) (rejecting equal protection and due process
challenges to paternity registry statute because putative father had notice of
adoption proceedings and thus the constitutional argument did not apply to
him); see also Santikos, 836 S.W.2d at 633; Meshell, 739
S.W.2d at 205; Ex Parte Dave, 220 S.W.3d at 156.  Without evidence of an
actual injury in the case before it, the trial court erred in declaring the
paternity registry statute unconstitutional.  Therefore, we reverse the trial
court=s judgment and
remand for further proceedings consistent with this opinion.

 

 

/s/      Leslie B. Yates

Justice

 

Panel consists of
Chief Justice Hedges and Justices Yates and Guzman.









[1]  The trial court also based its ruling on the
disparity of treatment of alleged fathers depending on the age of the child. 
The statute requires due diligence to locate an alleged father who has not
registered if the child is over one year of age at the time the petition for
adoption or termination is filed, but that is not required if the child is
under one.  See Tex. Fam. Code
Ann. ' 161.002(b)(2), (3).  However, any termination order
under section 161.002(b)(2) or 161.002(b)(3) rendered after January 1, 2008
does not require either service or an attempt to locate the alleged father,
regardless of the age of the child.  See id. ' 161.002(c-1).  Because any termination order in this
case will necessarily be rendered after January 1, 2008, any such concern is
moot in this case.





[2]  This rule is altered in First Amendment cases and is
thus not applicable here.  See Santikos, 836 S.W.2d at 633; Rodriguez, 47 S.W.3d at 88.





[3]  Even with a complaining father, the
constitutionality of paternity registry statutes has been overwhelmingly
upheld.  See, e.g., Lehr, 463 U.S. at 249B68; A.S.B. v. Dep=t of Children & Family Servs., 688 N.E.2d 1215, 1220B25 (Ill. App. Ct. 1997); Heidbreder v. Carton, 645 N.W.2d 355,
372B77 (Minn. 2002); Friehe v. Schaad, 545 N.W.2d
740, 744B48 (Neb. 1996); Robert O. v. Russell K., 604
N.E.2d 99, 101B05 (N.Y. 1992); In re Baby Boy K., 546 N.W.2d
86, 90B101 (S.D. 1996); Beltran v. Allan, 926 P.2d
892, 897B98 (Utah Ct. App. 1996).