

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0156-22

### STATE OF TEXAS

### v.

### DWAYNE ROBERT HEATH, Appellee

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE TENTH COURT OF APPEALS MCLENNAN COUNTY**

NEWELL, J., delivered the opinion of the Court in which HERVEY, RICHARDSON, WALKER, SLAUGHTER and MCCLURE, JJ., joined. KEEL, J., filed a dissenting opinion in which KELLER, P.J., and YEARY, J., joined.

Does the mandate in Article 39.14(a) of the Texas Code of Criminal Procedure that the "the state" produce discovery "as soon as practicable after receiving a timely request" include discoverable items which, unbeknownst to the prosecuting attorney, are in the possession of law enforcement agencies?

Yes. In this context, "the state" means the State of Texas and includes prosecutors and law enforcement. "As soon as practicable" as the phrase appears in Article 39.14(a) means as soon as reasonably possible and does not contain a knowledge requirement on behalf of the prosecution. Thus, items discoverable under Article 39.14(a) that are in the possession of law enforcement must be produced as soon as practicable after the State's receipt of a timely request for discovery.[1] This case also requires us to consider whether a trial court has the authority to exclude evidence that was not timely disclosed by the State absent a showing of bad faith or prejudice. We agree with the court of appeals that under the circumstances of this case the trial court had the authority to exclude the evidence at issue. Accordingly, we affirm the judgment of the court of appeals.

## Background

Appellee was indicted with the offense of injury to a child in 2016.[2] Trial counsel was appointed and several days later, on March 23, 2017, counsel emailed a request for discovery to the District Attorney's Office. The email read simply "[c]an I get discovery on this client?" and included the relevant

---

[1] Additionally, Article 39.14(h) creates an automatic duty for the state to disclose exculpatory, impeaching, or mitigating evidence that exists even if the defendant does not specifically request disclosure of such evidence. Tex. Code Crim. Proc. Ann. art. 39.14(h). In this case, as will be explained in greater detail below, Appellee only argues that the State violated Article 39.14(a).

[2] Tex. Penal Code Ann. § 22.04(a)(3).

cause number.[3]  Thereafter, the State provided discovery to the defense which included law enforcement records, child protective services records, and photographs.[4]

The case was placed on the trial docket.  At three different jury trial settings the State announced "ready" for trial,[5] but the case was reset each time apparently because another case went to trial.  Appellee's case was finally set to proceed to trial on May 29, 2018, the case's fourth jury trial setting.[6]

Six days before the fourth jury trial setting, the prosecutor learned of the existence of a 911 call placed by the complainant's mother on the date of the alleged offense.  The prosecutor emailed Appellee's counsel that additional discovery was available.  Two days later, Appellee filed a pre-trial application for a writ of habeas corpus and motion to suppress the 911 call alleging that the evidence was improperly withheld in violation of Article 39.14 of the Code of Criminal Procedure and various constitutional provisions.[7]

---

[3] The State did not argue to the trial court or on appeal that this request was insufficiently detailed to trigger the prosecutor's duty to provide discovery under the statute.  We assume without deciding that it was sufficient.

[4] The trial court's findings of fact indicate that discovery was provided sometime before July 20, 2017.

[5] The parties appeared for trial on October 16, 2017, January 22, 2018, and February 26, 2018.

[6] A pretrial motions hearing was set for May 11, 2018, and a status conference was set for May 18, 2018.

[7] Appellee also argued that the recording of the 911 call was improperly withheld under the Sixth, Ninth, and Fourteenth Amendments of the United States Constitution, and Article 1, sec. 10 and 19 of the Texas Constitution.

The trial court held a hearing on Appellee's motion to suppress the morning of trial. Appellee argued the 911 call, which was made available to him six days prior to trial and fourteen months after his initial discovery request, should be excluded based upon a violation of the Michael Morton Act, which requires discovery in the possession, custody, or control of the state be provided as soon as practicable upon request.[8] He argued that "the state," as the term is used in Article 39.14, encompasses law enforcement, and thus, includes the Sheriff's Office's dispatch, who had been in possession of the 911 call since 2016.

The prosecutor responded that the District Attorney's Office was unaware of the 911 call's existence because the police report only referenced a "call for service" that was answered by a deputy. The prosecutor advised the trial court that she learned of the 911 call when she met with the complainant's mother who told her that she had called 911 on the date of the alleged offense. The prosecutor further explained that she requested a copy of the recording a few days after speaking with the complainant's mother and provided it to Appellee's counsel as soon as she received it. Therefore, the prosecutor argued, there was no violation of the Michael Morton Act.

The prosecutor also argued that because there had been no showing of bad faith by the State, the appropriate remedy for the delayed disclosure

---

[8] Michael Morton Act, Act of May 16, 2013, 83rd Leg., R.S. ch. 49, Tex. Gen. Laws 106, 106.

would be to grant a continuance to give the defense more time to review the evidence rather than to exclude the evidence.[9]  Appellee stated he was not asking for more time.  Appellee argued that bad faith was not required under Article 39.14(a), as amended by the Michael Morton Act, because it only requires that "the state," which includes law enforcement, provide discovery "as soon as practicable."[10]  Appellee did not allege that the prosecutor had acted in bad faith but instead argued that the recording had been in the possession of "the state" since 2016 and was requested fourteen months prior, making the disclosure untimely. The prosecutor responded that "as soon as practicable" means as soon as the prosecution becomes aware of evidence.

After considering the arguments of counsel, the trial court rejected the State's argument for a continuance[11] and granted Appellee's motion to exclude the 911 call.  Appellee announced he was ready for trial.  Rather than proceed to trial, the trial court granted the State's unopposed request for a

---

[9] At the evidentiary hearing, Appellee specified that he was not requesting a continuance and when the State asserted it did not want to proceed without the 911 call, the trial court responded that it would not grant the State's request for a continuance.

[10] Tex. Code Crim. Proc. Ann. art. 39.14(a).

[11] The State did not file a sworn, written motion for a continuance.  *See* Tex. Code Crim. Proc. Ann. art. 29.03 ("A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion."); Tex. Code Crim. Proc. Ann. art. 29.08 ("All motions for continuance must be sworn to by a person having personal knowledge of the facts relied upon for the continuance.").  In cases in which a defendant appeals the denial of an oral motion for continuance, we have held that the failure to file a written motion for continuance forfeits any claim on appeal. *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009) ("Thus, if a party makes an unsworn oral motion for continuance and the trial judge denies it, the party forfeits the right to complain about the judge's ruling on appeal.").

stay of the proceedings so that the State could appeal the trial court's ruling excluding the evidence of the 911 call.

At the State's request, the trial court entered written findings of fact and conclusions of law. The trial court made the following findings of fact:

- A 911 call was made on or about November 5, 2016, regarding this alleged offense. Law enforcement has maintained a recording of this 911 call since it was made.

- Defendant requested discovery from the Office of the Criminal District Attorney of McLennan County on March 20, 2017.

- The District Attorney provided discovery to Defendant sometime before July 20, 2017, that consisted of written reports and photographs. The written reports make no reference to a 911 call.

- The District Attorney failed to ascertain the existence of the 911 recording by the first pretrial setting on September 29, 2017.

- The District Attorney failed to ascertain the existence of the 911 recording for the settings on October 6, 2017, October 16, 2017, January 5, 2018, January 12, 2018, January 22, 2018, February 9, 2018, February 16, 2018, February 26, 2018, May 11, 2018, and May 18, 2018.

- A member of the District Attorney's office met with a witness or witnesses on or about May 18, 2018, and first learned that a call to 911 had been made. The prosecutor promptly requested a recording of this call from the McLennan County Sheriff's Department.

- The District Attorney emailed defense counsel on May 23, 2018, that additional discovery was available. This additional discovery was a copy of the 911 call.

- Defense counsel obtained this additional discovery on or about May 23, 2018.

- The case was set, and all parties were ready for trial by jury to begin May 29, 2018.

The trial court made the following conclusions of law:

- The 911 recording at issue is evidence subject to disclosure under Article 39.14(a).

- The State's duty of disclosure extends to discoverable items "that are in the possession, custody, or control of the state or any person under contract with the state."

- Under Article 39.14, items in possession of the State include items in possession of law enforcement agencies.

- A District Attorney has "a specific duty . . . to ascertain what evidence within the terms of [Article 39.14 is] held by the police and to make such evidence available to the defense."

- A District Attorney has a statutory duty to provide all relevant discovery "as soon as practicable after receiving a timely request from the defendant."

- When Defendant requested discovery on March 20, 2017, this commenced a "specific duty" on the District Attorney's part to ascertain what discoverable evidence was held by the Sheriff's department and disclose it "as soon as practicable."

- Under the facts of this case, the District Attorney's failure to disclose the 911 recording until the week before trial (more than 18 months after an agency of the State first took possession of the recording and more than 14 months after discovery was requested) constitutes a violation of the duty imposed by the plain language of Article 39.14(a) that "as soon as practicable" "the state shall produce."

- Because the District Attorney failed to comply with Article 39.14(a), the recording is excluded from the evidence.

**Appeal**

The State appealed.[12]  The State argued that the trial court misapplied the remedy for a violation of Article 39.14 because there was no showing of a willful violation by the State.  According to the State, the appropriate remedy should have been a continuance rather than excluding the evidence.  The court of appeals did not reach that issue, however.  Instead, the court of appeals held that the trial court abused its discretion to exclude the 911 call because defense counsel's email requesting discovery was not sufficient to trigger the requirements of Article 39.14(a).[13]  The court of appeals reasoned that because counsel's email did not refer to Article 39.14 or specify any items sought to be produced by the State, it did not require the State to comply with Article 39.14.[14]

Appellee sought discretionary review before this Court challenging the court of appeals' conclusion on several grounds.  We held that the court of appeals erred to address an issue not presented to the trial court or raised by the parties on appeal.[15]  The State had not argued before the trial or appellate

---

[12] Tex. Code Crim. Proc. Ann. art. 44.01(a)(5)(" The state is entitled to appeal an order of a court in a criminal case if the order: (5) grants a motion to suppress evidence, a confession, or an admission, if jeopardy has not attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance in the case[.]").

[13] *State v. Heath*, 582 S.W.3d 495, 497 (Tex. App. – Waco 2018).

[14] *Heath*, 582 S.W.3d at 497.

[15] *State v. Heath*, PD-0012-19, 2019 WL 6909439, at *2 (Tex. Crim. App. 2019) (not designated for publication) ("Generally, 'appellate courts are free to review 'unassigned error' – a claim that was preserved in the trial court below but was not raised on appeal.' However, errors that are subject to procedural default may not be remedied by the appellate court as unassigned error unless the error was in fact preserved in the trial court.") (citing *Sanchez v.*

court that counsel's discovery request was inadequate or failed to trigger its duty under Article 39.14.[16]  Thus, we held the issue was not preserved and the court of appeals erred to reach an unassigned error that was subject to procedural default.[17]  We reversed and remanded the case to the lower court for a resolution of the issues raised by the State.[18]

On remand, the court of appeals affirmed the trial court's order granting the motion to suppress.[19]  The court reasoned that the legislative amendments to Article 39.14 substantively changed the process for discovery disclosures and, as a result, "once discovery of an item is requested, the State now has an affirmative duty to search for the item and produce it in a timely manner."[20]  The court of appeals further stated that "a failure to at least inquire about the existence of discoverable items in response to a proper request in a timely manner is all the evidence necessary to show that the failure to timely produce the item in discovery was due to what was previously characterized as a 'willful violation' or 'bad faith.'"[21]  According to the court of

---

*State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006) (quoting *Pena v. State*, 191 S.W.3d 133, 136 (Tex. Crim. App. 2006)).

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *State v. Heath*, 642 S.W.3d 591, 593 (Tex. App. – Waco 2022).

[20] *Id.* at 597.

[21] *Id.*

appeals there was "no dispute that the 911 call was in the possession of the State, which is not limited to the prosecutor, but includes law enforcement and related agencies."[22] The court went on to explain, "[t]he prosecutor need not know what it is that is not being produced, but the failure to even look to see if there is something responsive to the request in light of the duty to search out responsive discovery is adequate for the trial court to fashion a remedy appropriate to the situation."[23] The court of appeals also held the trial court's remedy of excluding the recording was not an abuse of discretion considering the State was presumably ready to proceed to trial without the 911 call at three prior jury trial settings.[24] The court of appeals concluded that this was an appropriate sanction for the failure to timely produce the recording and affirmed the trial court's granting of Appellee's motion to suppress.[25]

## Discretionary Review

The State now seeks discretionary review, and in two issues, asks this Court to determine:

1. Has the State's statutory duty to disclose evidence "as soon as practicable" been violated if the prosecutor fails to disclose an item of evidence the D.A.'s Office does not know exists but that has been in police custody for months?

---

[22] *Id.* at 595 ("The parties further do not dispute that the recording was required to be produced because it was 'material' as required in article 39.14(a).").

[23] *Id.* at 597.

[24] *Id.*

[25] *Id.* at 598.

2. If so, does the trial court have authority to impose an exclusionary sanction when there has been no bad faith or demonstrable prejudice to the opposing party and the statute provides for no such sanction?

The State argues, as it did before the trial court, that Article 39.14(a)'s directive to produce discovery "as soon as practicable" applies only to items in the prosecutor's possession, custody, or control, which does not extend to what is in the exclusive possession, custody, or control of law enforcement agencies. Although the State did not argue on appeal that the word "state" in Article 39.14(a) does not include law enforcement agencies, it contends that the court of appeals nevertheless erred to conclude that the issue was not disputed because it was disputed before the trial court and therefore, was preserved for a merits determination by this Court.[26]

The State argues on discretionary review that the term "state" in Article 39.14(a) is most reasonably interpreted to mean the prosecuting attorney. According to the State, the Michael Morton Act definitively established that "the state" does not include law enforcement because the Legislature replaced "agencies" in the phrase "in the possession, custody, or control of the state or any of its agencies" with "any person under contract with the state."[27] The

---

[26] *Id.* at 595 ("There is no dispute that the 9-1-1 recording was in the possession of the State, which is not limited to the prosecutor, but includes law enforcement and related agencies."). The State argues the issue was preserved in the trial court by the prosecutor's argument that Article 39.14 only required the 911 call to be disclosed when it came into the prosecution's possession or control.

[27] Act of May 16, 2013, 83rd Leg., R.S. ch. 49, Tex. Gen. Laws 106, 106.

State further argues that even if Article 39.14 applies to evidence in law enforcement's possession, the trial court lacked authority to impose an exclusionary remedy because there was no bad faith on the part of the State, nor was Appellee prejudiced by the late disclosure.

Appellee contends that Article 39.14(a) extends to law enforcement agencies because the State has constructive possession of items possessed by State agencies. According to Appellee, Article 39.14(a) imposes a duty on the prosecutor to ascertain discoverable matters in the possession of law enforcement agencies "as soon as practicable." Appellee further argues that the State's interpretation would render Article 39.14's reference to "counsel for the state" meaningless and in turn, would undermine the legislative intent behind the statute.[28] Appellee continues that the Legislature removed the phrase "of any of its agencies" in order to remove statutory surplusage; since items in the possession of State agencies are also in the constructive possession of the State, the items are therefore subject to the State's control. Finally, Appellee maintains that the trial court had common law or inherent authority to exclude the 911 call based on an implied finding of willful misconduct which, Appellee concedes, is required for an exclusion of evidence based on a discovery violation. Appellee points to the State's announcements of ready for trial on four occasions and the length of time that "the state"

---

[28] Tex. Code Crim. Proc. Ann. art. 39.14(a).

possessed the recording as evidence of implied willful misconduct on behalf of the prosecutor.

## Standard of Review

We review a trial court's decision to exclude evidence under an abuse of discretion standard.[29]  A trial court abuses its discretion if its decision lies outside of the zone of reasonable disagreement.[30]  An appellate court may not substitute its own decision for that of the trial court.[31]  As long as a trial court's evidentiary ruling is within the zone of reasonable disagreement, this Court will not intercede.[32]

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review that gives almost total deference to the trial court's determination of historical facts that the record supports and consider *de novo* the application of the law to the facts.[33]  We defer to the trial court's findings unless they are unsupported by the record and view the evidence in the light most favorable to the trial court's ruling.[34]  We also afford almost

---

[29] *Francis v. State*, 428 S.W.3d 850, 855 (Tex. Crim. App. 2014) (citing *Oprean v. State*, 201 S.W.3d 724, 727 (Tex. Crim. App. 2006) ("When reviewing a trial judge's decision to admit or exclude evidence, an appellate court must determine whether the judge's decision was an abuse of discretion.")).

[30] *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002).

[31] *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018).

[32] *Lopez*, 86 S.W.3d at 230.

[33] *State v. Cortez*, 548 S.W.3d 198, 203 (Tex. Crim. App. 2018).

[34] *State v. Johnson*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011).

total deference to the trial judge's rulings on mixed questions of law and fact when the resolution of those questions depends upon an evaluation of credibility and demeanor.[35] We review *de novo* mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor.[36] The trial court's ruling on a motion to suppress will be reversed only if it is arbitrary, unreasonable, or outside the zone of reasonable disagreement.[37]

Though the record is not as well developed as it could have been, the material facts are undisputed.[38] Shortly after appointment, Appellee's counsel requested discovery in Appellee's case. Neither party disputes that the 911 call fell under that discovery request. However, the 911 call was not specifically referenced in the records turned over to the State and produced to the defense. The State learned of the 911 call just before the fourth trial setting during a witness interview after having announced ready for trial on three prior occasions. The State promptly requested a copy of the call and turned it over to the defense six days before trial. Appellee asked the trial

---

[35] *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013).

[36] *Id.*

[37] *Cortez*, 548 S.W.3d at 203*.*

[38] *Heath*, 642 S.W.3d at 593 n. 3 (noting that the record of the hearing where the prosecutor set forth what efforts were taken to ascertain what evidence was in the State's possession was not thorough and that the result might have been different had the prosecutor established what she had done to find what evidence was in the State's possession prior to May of 2018). Indeed, the record does not contain a copy of a recording of the 911 tape at the center of the dispute.

court to suppress the recording in light of the discovery violation, he did not seek a continuance or otherwise argue he had been prejudiced by the untimely disclosure.

The trial court's decision to grant Appellee's motion to suppress the 911 call requires us to interpret Article 39.14. Statutory construction is a question of law that we review *de novo*.[39] When interpreting statutes, we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation.[40] Legislative intent isn't the law, but discerning legislative intent isn't the end goal, either.[41] Rather, the end goal is interpreting the text of the statute.[42] In so doing, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of the text at the time of its enactment.[43]

In interpreting the text of a statute, we must presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if possible.[44] We do not focus solely upon a discrete provision; we look at other statutory provisions as well to harmonize

---

[39] *Watkins v. State*, 619 S.W.3d 265, 273 (Tex. Crim. App. 2021).

[40] *Boykin v. State*, 818 S.W.3d 782, 785 (Tex. Crim. App. 1985).

[41] *Watkins*, 619 S.W.3d at 272.

[42] *Id.*

[43] *Boykin*, 818 S.W.3d at 785.

[44] *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997).

provisions and avoid conflicts.[45]  When dealing with the passage of a particular act, such as the one at issue here, we look to the entire act in determining the legislature's intent with respect to a specific provision.[46]  We construe an amended statute as if it had originally been enacted in its amended form, mindful that the legislature, by amending the statute, may have altered or clarified the meaning of earlier provisions.[47]  When a particular term is not legislatively defined but has acquired a technical meaning, we construe that term in its technical sense.[48]  We may also consult standard or legal dictionaries in determining the fair, objective meaning of undefined statutory terms, and legal dictionaries to determine the meaning of undefined legal terms.[49]

## Analysis

Prior to 1965, no Texas statute provided for discovery or authorized trial judges in criminal proceedings to order the State to produce or permit for

---

[45] *See, e.g.*, *Murray v. State*, 302 S.W.3d 874, 877-79 (Tex. Crim. App. 2009) (interpreting the phrase "included in the indictment" in Article 4.07 of the Code of Criminal Procedure after considering Articles 37.08 and 37.09 of the Code of Criminal Procedure).

[46] *See, e.g.*, *Taylor v. Firemen's & Policemen's Civil Service*, 616 S.W.2d 187, 190 (Tex. 1981); *see also Ex parte Woods*, 52 Tex. Crim. 575, 108 S.W. 1171, 1176 (1908).

[47] *Powell v. Hocker*, 516 S.W.3d 488, 493 (Tex. Crim. App. 2017); *see also Mahaffey v. State*, 316 S.W.3d 633, 642 (Tex. Crim. App. 2010) (citing *Getts v. State*, 155 S.W.3d 153, 158 (Tex. Crim. App. 2005)).

[48] *See Medford v. State*, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000).

[49] *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011).

inspection items the State intended to use at trial.[50]  This Court recognized the unfairness of that trial-by-fire system and welcomed a law concerning pretrial discovery.[51]  With the enactment of the Code of Criminal Procedure in 1965 came Article 39.14, which provided:

> Upon motion of the defendant showing good cause therefor and upon notice to the other parties, the court in which an action is pending may order the State before or during trial of a criminal action therein pending or on trial to produce and permit the inspection and copying or photographing by or on behalf of the defendant of any designated documents, paper, written statement of the defendant (except written statements of witness and except the work produce of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs, objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody, or control of the State or any of its agencies.[52]

As we observed in *Watkins v. State*, the original version of Article 39.14 was patterned after its civil counterpart, Rule 167 of the Rules of Civil Procedure.[53] We noted that one possible justification for this was that civil lawyers who were familiar with the civil discovery scheme would not have wanted to learn

---

[50] *See, e.g., Lopez v. State*, 252 S.W.2d 701, 705 (Tex. Crim. App. 1952) (finding no error in refusal to grant a motion to require the district attorney to allow the defendant to copy and inspect his confession and other evidence prior to trial noting, "[i]t has been the consistent holding of this Court, through the years, that such evidence, prior to its introduction in evidence, is not a public document and not subject to inspection of appellant prior to the moment it is offered"); *Smith v. State*, 240 S.W.2d 783, 786 (Tex. Crim. App. 1951) ("We know of no statutory requirement and no holding of this Court which would require that the prosecution present to the defense the written confessions and exhibits to be used in the prosecution.").

[51] *Smith*, 240 S.W.2d at 786 ( recognizing "the unfairness which sometimes confronts one on trial under such circumstances").

[52] Acts 1965, 59th Leg., R.S., ch. 722, Tex. Gen. Laws 317, 475.

[53] *Watkins*, 619 S.W.3d at 282.

an entirely different system when representing indigent defendants.[54]  We also set out the text of Rule 167.  Comparison of Rule 167 to the original version of Article 39.14 reveals that Article 39.14 replaced references to a party ordered by a trial court to disclose evidence with "the State."[55]

Article 39.14 remained untouched until 1999 when the preceding was cast as subsection (a), and subsection (b) was added to provide for the reciprocal pretrial disclosure of expert witnesses upon notice and the filing of a motion.[56]  At that time, subsection (b) provided:

> On motion of a party and on notice to the other parties, the court in which an action is pending may order one or more of the other parties to disclose to the party making the motion the name and address of each person the other may use at trial to present evidence under the Rules 702, 703, and 705, Texas Rules of Evidence [concerning expert witness testimony]. The court shall specify in the order the time and manner in which the other party must make the disclosure to the moving party, but in specifying the time in which the other party shall make the disclosure the court shall require the other party to make the disclosure not later than the 20th day before the date trial begins.

Until 2013, Article 39.14 consisted of these two subsections.  Under these earlier versions of the statute, this Court recognized that there was no general

---

[54] *Id.*

[55] *Id.* at 282-83.

[56] Act of June 18, 1999, 76th Leg., R.S., ch. 578, Tex. Gen. Laws, 3118, 3118.

right to discovery in Texas.[57]  Likewise, there is no general right to discovery under the federal constitution.[58]

In 2013, however, the Michael Morton Act "revamped Article 39.14 completely," "overhaul[ed]" discovery in Texas, and "[o]n the whole" made "disclosure the rule and non-disclosure the exception" in Texas.[59]  "According to the plain text of Article 39.14, criminal defendants now have a general statutory right to discovery in Texas beyond the guarantees of due process."[60]  The Michael Morton Act is understood to have broadened the State's discovery obligations.[61]  This case calls for this Court to interpret Article 39.14, as amended by the Michael Morton Act, to determine whether the State violated its duty to disclose evidence "as soon as practicable" when the evidence was possessed by a state law enforcement agency but not the prosecutor trying the case.

Article 39.14(a) currently provides:

Subject to the restrictions provided by Section 264.408, Family Code, and Article 39.15 of this Code, as soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication,

---

[57] *Quinones v. State*, 592 S.W.2d 933, 941 (Tex. Crim. App. 1980) ("appellant does not have a general right to discovery of evidence in the possession of the State . . . Art. 39.14 makes it clear that the decision on what is discoverable is committed to the discretion of the trial court") (internal citations omitted), *abrogated on other grounds Ehrke v. State*, 459 S.W.3d 606 (Tex. Crim. App. 2015).

[58] *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).

[59] Tex. Code Crim Proc. Ann. art. 39.14(a); *see Watkins*, 619 S.W.3d at 277.

[60] *Watkins*, 619 S.W.3d at 291.

[61] *Id.* at 278.

copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written, or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state. The state may provide to the defendant electronic duplicates of any documents or other information described by this article. The rights granted to the defendant under this article do not extend to written communication between the state and an agent, representative, or employee of the state. This article does not authorize the removal of the documents, items, or information from the possession of the state, and any inspection shall be in the presence of a representative of the state.[62]

In relevant part, Article 39.14(a) imposes a duty upon the State to produce discovery "as soon as practicable after receiving a timely request from the defendant" excluding "the work product of counsel for the state."[63] The duty to disclose includes evidence "not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state."[64] Previously, the statute required a motion showing good cause and a court order which commanded the State to produce "evidence material to any matter involved in the action and which are in the possession,

---

[62] Tex. Code Crim. Proc. Ann. art. 39.14(a).

[63] *Id*.; *see also* Tex. Gov't Code § 311.016(2) ("'Shall' imposes a duty.").

[64] Tex. Code Crim. Proc. Ann. art. 39.14(a).

custody, or control of the State or any of its agencies."[65]  The statute has always explicitly excluded the State's work product, consistent with its original civil counterpart.[66]

Here, the 911 call is evidence material to the action and is not the work product of counsel for the State or otherwise privileged.[67]  Given that Appellee's counsel sent a discovery request within three days of appointment and there was no objection to the adequacy of that request, there is no dispute before us regarding the adequacy or timeliness of the request.[68]  Rather, the parties dispute whether the State violated Article 39.14 by failing to produce evidence that was in the possession of law enforcement but unknown to the prosecutor.  To answer this question, we must consider the meaning of the phrases "the state" and "as soon as practicable" as used in Article 39.14(a).

As we explain in greater detail below, we hold that items in the possession, control, or custody of "the state," include items in the possession of law enforcement.  Moreover, the statute does not speak to the prosecution's state of mind, nor does it contain any *mens rea* limitation.  Rather, the focus of the statute is on the State's obligation and ability to disclose evidence in

---

[65] Tex. Code Crim. Proc. Ann. art. 39.14(a) (2009).

[66] Tex. Code Crim. Proc. Ann. art. 39.14(a).

[67] Neither party introduced a copy of the 911 call into the record in this case.  However, neither party appears to argue that it contains exculpatory evidence.  We assume for the sake of resolving the issues in this case that the 911 call contains only inculpatory information.

[68] *See Heath*, 2019 WL 6909439, at *2 (holding any complaint that the discovery request was inadequate under Article 39.14 was waived).

the State's possession, not whether a specific prosecutor knew that law enforcement had the evidence in its possession. Thus, Article 39.14 can be violated by a prosecutor's non-disclosure of evidence due to law enforcement's failure to turn evidence over to the prosecution, even if law enforcement's possession of evidence is unknown to counsel for the State.

### Who is "The State" for Purposes of Article 39.14?

As an initial matter, we must consider whether the State has preserved its argument that we should construe the term "state" in Article 39.14 to mean "counsel for the state."[69] On appeal, the State argued only that the trial court abused its discretion to exclude the 911 call absent a showing that the prosecutor acted willfully in failing to provide discovery. The State did not argue that it is only obligated to turn over evidence in the prosecutor's possession, custody, or control.[70] On remand, the court of appeals held that the trial court acted within its discretion to exclude the call, noting "[t]here is no dispute that the 9-1-1 recording was in the possession of the State, which is not limited to the prosecutor, but includes law enforcement and related agencies."[71] On discretionary review, the State challenges this conclusion arguing "the state" means the prosecutor and the call was disclosed when it

---

[69] Tex. R. App. P. 33.1(a)(1).

[70] Indeed, the State conceded at oral argument before this Court on Appellee's petition for discretionary review that the amendments to Article 39.14 extended its reach to all state agents not just the prosecutor.

[71] *Heath*, 642 S.W.3d at 595.

became available to the prosecutor. The State contends it preserved this issue at trial by arguing "as soon as practicable" means when the State becomes aware of the evidence.

We agree with the State that it preserved the issue of whether "the state" in Article 39.14 encompasses law enforcement.[72] Even though it did not raise the argument on appeal until its petition for discretionary review, the State argued before the trial court that Article 39.14 only applied to prosecutors. We granted review to consider the court of appeals' decision on this issue and Appellee does not challenge the State's preservation argument before us. Having determined the issue is properly before us, we now turn to the meaning of "state" in Article 39.14.

Article 39.14's use of the word "state" means exactly what one would think it means—the "State of Texas." And while the statutory reference to the State of Texas necessarily includes the prosecutor as a representative of "the state" just as a reference to the "defendant" necessarily includes a reference to the defendant's representative, by itself, the word "state" refers to the State of Texas as a party to the lawsuit. It is not limited to the prosecutor trying the case. Where the statute limits the word's applicability to a particular representative or agent of the State of Texas, it specifically does so. Any general reference to the "state" refers to the State of Texas in its broadest

---

[72] Tex. R. App. P. 33.1; *see Sanchez*, 209 S.W.3d at 121 ("appellate courts are free to review 'unassigned error' – a claim that was preserved in the trial below but was not raised on appeal").

sense. And in doing so, it places a duty to disclose evidence upon the prosecutor as well as law enforcement.

This interpretation best harmonizes the statute's multiple different uses of the word "state," as well as the multiple instances in which the word "state" is modified to specifically refer to a person acting on behalf of the State. This interpretation is consistent with the original version of Article 39.14's substitution of the word "State" for the word "party" in the original civil discovery counterpart. It is also consistent with Article 39.14's later use of the phrase "counsel for the state."[73] By later modifying the word "state" with a specific reference to "counsel," the text clearly uses the word "state" as a reference to the State of Texas as a party to the lawsuit.

Moreover, the Legislature's use of the phrase "counsel for the state" to exclude work product from the State's discovery obligations would make little sense if we were to construe "state" as limited only to the prosecutor.[74] This would effectively require us to read the statute to say, "but not including the work product of counsel for counsel in the case." Further, Article 39.14 has always contained an exception from discovery for "the work product of counsel in the case," but the Michael Morton Act modified "counsel" with the words

---

[73] Tex. Code Crim. Proc. Ann. art. 39.14(a) (excluding from discovery the "work product of counsel for the state").

[74] *Id.*

"for the state."[75]  If we were to construe "the state" to mean only "counsel for the state," this legislative change would be meaningless.[76]

This interpretation is also consistent with Article 39.14(a)'s use of the word "state" in the phrase "in the possession, custody, or control of the state, or any person under contract with the state."  The State points to this phrase to argue that the legislative amendment removing the reference to "any agencies" of the State suggests the word "state" must now be interpreted to mean only "counsel for the state" or otherwise to specifically exclude law enforcement agencies.  But this interpretation overlooks that the phrase goes on to use the word "state" to refer to the State generally.  If we were to read the word "state" in this phrase to mean "counsel for the state" then the statute would be referring to items in possession of those under contract with the prosecutor.  As a result, the prosecution would be under no obligation to produce and permit inspection of items specifically listed as discoverable, such as the witness statements and offense reports described in the statute, which are generally in the possession of law enforcement rather than third-party contractors with a District Attorney's Office.  The more natural reading of the statute is that the "state," including law enforcement as well as third-party

---

[75] Act of May 16, 2013, 83rd Leg., R.S. ch. 49, Tex. Gen. Laws 106, 106.

[76] *Ex parte Trahan*, 591 S.W.2d 837, 842 (Tex. Crim. App. 1979) ("In enacting an amendment the Legislature is presumed to have changed the law, and a construction should be adopted that gives effect to the intended change, rather than one that renders the amendment useless.").

contractors with the state such as crime laboratories,[77] has a duty to disclose evidence.  That a prosecutor may be responsible in practice for carrying out the duty to disclose[78] does not  equate to a textual basis for a limitation on the meaning of "state" as it is used in the statute.

Additionally, providing an exception to the disclosure of discoverable evidence when it is only in the possession of law enforcement and not in the possession of the prosecutor would cause an irreconcilable conflict with Article 39.14(h).  The Michael Morton Act added subsection (h) to Article 39.14, which now provides:

> Notwithstanding any other provision of this article, the state shall disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged.[79]

This subsection in Article 39.14 imposes a free-standing duty on "the state" to disclose all exculpatory, impeaching, and mitigating evidence in its

---

[77] *See, e.g.,* Tex. Gov't. Code Ann. § 411.144(f) (authorizing the director of the Texas Department of Public Safety to contract with "a laboratory, state agency, private entity, or institution of higher education for services to perform DNA analyses."); *see also* Tex. Code Crim. Proc. Ann. art. 38.35 (a)(1) (defining "crime laboratory" as including "a public or private laboratory or other entity that conducts a forensic analysis subject to this article"); *Rhomer v. State*, 569 S.W.3d 664, 672-75 (Tex. Crim. App. 2019) (Hervey, J. concurring) (setting out statutes and rules related to crime laboratory accreditation and the licensing of forensic analysts in Texas); *see, e.g.,* Texas Forensic Science Commission, https://fsc.txcourts.gov/AccreditedLabPublic (last visited June 3, 2024) (providing a searchable list of crime laboratories accredited in Texas).

[78] *See* Tex. Code Crim. Proc. Ann. art. 2.01 ("[e]ach district attorney shall represent the State in all criminal cases in the district courts of his district").

[79] Tex. Code Crim. Proc. Ann. art. 39.14(h).

possession, custody, or control that tends to negate guilt or reduce punishment for the offense charged.[80]  This duty exists regardless of whether the defense ever requests discovery from the State.

We have recognized that this duty is "much broader than the prosecutor's duty to disclose as a matter of due process under *Brady v. Maryland.*"[81]  But even under *Brady*, a prosecutor's duty to disclose exculpatory information has long been understood to require disclosure of information held by law enforcement.[82]  In the context of *Brady*, we have recognized that law enforcement officers are agents of the State.[83]  And an item under the exclusive control of law enforcement as an agent of the State

---

[80] *Watkins*, 629 S.W.3d at 277 (citing Article 39.14(h)).

[81] *Id.* ("Our Legislature did not limit the applicability of Article 39.14(h) to "material" evidence, so this duty to disclose is much broader than the prosecutor's duty to disclose as a matter of due process under *Brady v. Maryland*.") (citing *Brady v. Maryland*, 373 U.S. 83 (1963)).

[82] *See Pena v. State*, 353 S.W.3d 797, 811 (Tex. Crim. App. 2011) (holding that the court of appeals erred to conclude that *Brady* did not apply because the duty to disclose existed where an audio recording was known to the State, which includes, "in addition to the prosecutor, other lawyers and employees in his office and members of law enforcement connected to the prosecution of the case"); *Ex parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012) ("Even if the prosecutor was not personally aware of the evidence, the State is not relieved of its duty to disclose because "the State" includes, in addition to the prosecutor, other lawyers and employees in his office and members of law enforcement connected to the investigation and prosecution of the case.") (citing *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)); *see also Youngblood v. West Virginia*, 547 U.S. 867, 869-70 (2006) (a *Brady* violation occurs when the government fails to turn over evidence that is known only to the police and not the prosecutor).

[83] *Id.*

is subject to disclosure under *Brady*.[84]  Article 39.14(h) not only codifies the *Brady* requirement, it broadens its reach.[85]

The State's reading of "the state" in Article 39.14(a) would conflict with Article 39.14(h)'s codification and expansion of *Brady* because it would necessarily limit the State's obligation under subsection (h) to only exculpatory, impeaching, or mitigating items in the possession, custody, or control of the prosecutor.  In this way, a prosecutor's obligations under Article 39.14(h) would diminish rather than broaden the State's obligation under *Brady* and the Michael Morton Act*.*  It would effectively return criminal discovery to a pre-2013 paradigm in which there is no general right to discovery beyond *Brady v. Maryland*.[86]

Finally, this  interpretation of the word "state" is consistent with the Legislature's more recent passage of Art. 2.1397.  In 2021, the Legislature passed Senate Bill 111, entitled "Certain Duties of Law Enforcement Agencies Concerning Certain Information Subject to Disclosure to a Defendant."[87]  The

---

[84] *Id.*

[85] *Watkins*, 618 S.W.3d at 277.

[86] *But see* S. Comm. on Crim. Justice, Bill Analysis, S.B. 1611, 83rd Leg. R.S. (as filed July 26, 2013) (*Brady v. Maryland* requires prosecutors to turn over to the defense any evidence that is relevant to the defendant's case. However, *Brady* is vague and open to interpretation, resulting in different levels of discovery across different counties in Texas. That is why a uniform discovery statute is needed. S.B. 1611 will save attorney resources as well as taxpayer dollars by limiting discovery disputes and increasing efficient resolution of cases, all while reducing the likelihood of costly appeals and wrongful convictions).

[87] Act of June 14, 2021, 87th Leg., R.S., ch. 510, 2021 Tex. Gen. Laws 1011, 1011 (effective Sept. 1, 2021).

Bill enacted Article 2.1397 of the Code of Criminal Procedure, which, in

relevant part, provides:

> A law enforcement agency filing a case with the attorney
> representing the state shall submit to the attorney representing
> the state a written statement by an agency employee with
> knowledge of the case acknowledging that all documents, items,
> and information in the possession of the agency that are required
> to be disclosed to the defendant in the case under Article 39.14
> have been disclosed to the attorney representing the state.
>
> If at any time after the case is filed with the attorney representing
> the state the law enforcement agency discovers or acquires any
> additional document, item, or information required to be disclosed
> to the defendant under Article 39.14, an agency employee shall
> promptly disclose the document, item, or information to the
> attorney representing the state.[88]

The statute's reference to items that must be disclosed to the defendant

under Article 39.14 recognizes that both the prosecutor and law enforcement

have a duty to disclose evidence under Article 39.14 even if the evidence is

not in the possession of the prosecution.  The sponsors of this Bill recognized

that Article 39.14 requires prosecutors to disclose information that may be

known or not known to exist but was collected by and in the possession of the

investigating law enforcement agency.[89]  They further recognized that

---

[88] Tex. Code Crim. Proc. Ann. art. 2.1397(b), (c), *repealed by* Act of June 12, 2023, 88th Leg., R.S., ch. 765, 2023 Tex. Gen. Laws, 1839, 1976 (renumbering Article 2.1397 to Article 2A.209 effective January 1, 2025).

[89] S. Comm. on Crim. Justice, Bill Analysis, S.B. 111, 87th Leg. R.S. (as filed May 31, 2021). The Sponsor's Statement of Intent provided: "[u]nder Article 39.14 . . . prosecutors are required to turn over to the defense all material evidence except those items that are exempted by statute.  Prosecutors are obligated to disclose this evidence to the defendant, but in many instances, prosecutors are reliant on the release of evidence, known or not known to exist, collected by the investigating law enforcement agency. If an investigating law enforcement agency does not turn over information or evidence to the prosecutor, the prosecutor can face sanctions including reprimand, censure, termination and even disbarment

because discovery is facilitated by prosecutors, as representatives of the State, prosecutors may ultimately face sanctions if a law enforcement agency fails to disclose evidence.[90] The court of appeals observed that Article 2.1397 recognizes that the state's duty to produce discoverable information extends beyond the prosecutor to items in the possession of law enforcement.[91] We agree. With this recognition, the statute seeks to facilitate disclosure and prevent inadvertent non-disclosure, which supports Appellee's interpretation of Article 39.14(a).

The State contends, however, that Article 2.1397 recognizes that there is a distinction between what is in the possession of law enforcement and what is in the possession of the prosecution. The State argues that if evidence in the possession of law enforcement is considered to be in the possession of the prosecution, then Article 2.1397 would be unnecessary. On the contrary, Article 2.1397 is an attempt to assist prosecutors in meeting Article 39.14's requirements by adding an obligation to law enforcement to attach a written statement verifying that it has turned over evidence it was already obligated to turn over; it helps ensure that the prosecutor has turned over evidence "as

---

for his subsequent failure to disclose the information to the defense. Law enforcement agencies however, are not compelled to disclose the information, nor do they face sanctions for their inadvertent or willful failure to release all evidence or required information to prosecutors."

[90] *Id.*

[91] *Heath*, 642 S.W.3d at 597 n. 3.

soon as practicable" by providing verification that everything that is required to be disclosed has been turned over from law enforcement.

The most natural use of the word "state" in the statute is as a reference to the State of Texas as a party to the litigation.  The word "state" is only textually limited to "counsel for the state" when the Legislature intended to refer to attorneys representing the State.  Thus, we agree with Appellee that the deletion of the phrase "any of its agencies," and its replacement with "any person under contract with the State," did not limit the State's statutory obligation—it merely removed surplusage.  This interpretation of "state" renders its meaning consistent throughout the statute and avoids rendering the phrase "counsel for the state" meaningless.  It is also consistent with the purpose of the Michael Morton Act to broaden discovery for criminal defendants.

Even if we were to conclude that "the state," as utilized in Article 39.14(a), is ambiguous, the broader legislative objective, history, and circumstances under which the Michael Morton Act was enacted all lend themselves to our conclusion that "the state" still means the State of Texas.[92] As we have already noted, the Michael Morton Act expanded the State's

---

[92] *Watkins*, 619 S.W.3d*.* at 273 ("When the language of the statute is ambiguous . . . we may consider extra-textual factors in construing the statute . . . Extra-textual factors that we may consider to resolve ambiguity include: (1) the object sought to be obtained by the Legislature; (2) the circumstances under which the statute was enacted; (3) the legislative history; (4) the common law or former statutory provisions, including laws on the same or similar subjects; (5) the consequences of a particular construction; (6) the administrative construction of the statute; and (7) the title or caption, preamble, and any emergency provision.") (internal citations omitted).

obligation to disclose discovery to the defense, increased the number of State entities whose records are subject to discovery, and mandated that the disclosure of discovery happen quickly.[93] This makes sense considering the Act was passed in response to the wrongful conviction of Michael Morton, who spent twenty-five years in prison for a crime he did not commit because material exculpatory evidence had been withheld by the prosecutor.[94] The Michael Morton Act was enacted in part to preserve a criminal defendant's rights under *Brady v. Maryland*.[95] Thus, it would contravene the Legislature's intent in passing the Act to interpret "the state" under Article 39.14 to mean only evidence in the possession of a particular prosecutor as being subject to disclosure. It would also undermine the statute's purpose that "[e]very defendant should have access to all the evidence relevant to his guilt or innocence, with adequate time to examine it."[96] The State's suggested statutory interpretation would ultimately limit the scope of criminal discovery despite the obvious legislative intent to broaden it. Given our determination

---

[93] *Id.* at 278.

[94] *Id.* at 274-75 (citing Hearing on S.B. 1611 Before the S. Comm. on Criminal Justice, 83rd Leg., R.S. (2013)).

[95] *Id.* at 289 (citing Sen. Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 1611, 83rd Leg., R.S. (2013)).

[96] Senate Research Center, Bill Analysis, Tex. S.B. 1611, 83rd Leg., R.S. (July 26, 2013) (Rodney Ellis et al. statement of intent). During the third reading of 2013 SB 1611, Senator Ellis, the primary authority of the Michael Morton Act, stated the Act: "removes barriers to discovery processes in Texas to ensure a more relevant evidence procedure comes forward and evidence that is relevant will be disclosed; it has to be disclosed." S.J. of Tex., 83rd Leg., R.S. 818, 819 (2013).

that Article 39.14(a)'s reference to "the state" refers to the State of Texas, we must next consider the meaning of the statute's phrase "as soon as practicable."

## "As Soon As Practicable" by its Plain Terms Has No Knowledge Requirement

The State's statutory interpretation of the phrase "as soon as practicable" starts from the premise that the prosecution only violates Article 39.14 when it knowingly withholds evidence in an act of bad faith. This is unsurprising given that, prior to the Michael Morton Act's passage, this Court repeatedly held that there was no general right of discovery in Texas.[97] Given this legal landscape, the defense was required, as a practical matter, to characterize a prosecutor's failure to provide discovery as a violation of the prosecutions' duty to produce exculpatory evidence under *Brady v. Maryland*,[98] as some form of prosecutorial misconduct for violating a trial court's order for discovery,[99] or as an ethical violation under the Rules of Professional Misconduct.[100]

---

[97] *See Quinones*, 592 S.W.2d at 941, *abrogated on other grounds Ehrke v. State*, 459 S.W.3d 606 (Tex. Crim. App. 2015).

[98] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[99] *See State v. LaRue*, 152 S.W.3d 95, 97 (Tex. Crim. App. 2004) ("trial court's order excluding the evidence was based on its ultimate finding that the State acted willfully in violating the discovery order").

[100] *See Francis v. State*, 428 S.W.3d 850, 854-55 (Tex. Crim. App. 2014) (the exclusion of evidence willfully withheld under a discovery order "is in the nature of a court-fashioned sanction for prosecutorial misconduct"); Tex. Disciplinary Rules Prof'l Conduct 3.09(d) (prosecutor in a criminal case shall "make timely disclosure of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense").

But all of these arguments inherently contain a scienter requirement. Prosecutorial misconduct claims require a bad faith violation of a trial court's order. Even the special ethical duties of a prosecutor require a showing that the prosecutor withheld evidence he or she knew about.[101] A *Brady* violation occurs when the State suppresses favorable evidence whether willfully or inadvertently, but the *Brady* obligation "does not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist."[102] That such knowing conduct might violate a prosecutor's constitutional or ethical duties as well as the statute does not mean that the same standard applies for a mere statutory violation. And this case does not turn on a constitutional or ethical challenge to the prosecutor's behavior. Indeed, it is fair to observe that under the facts of this case, the prosecutor did not violate her constitutional or ethical duties under *Brady* or the disciplinary rules, nor did she intentionally violate a trial court's order.[103] That is not the issue in this case.

---

[101] Tex. Disciplinary Rules Prof'l Conduct 3.09(d) ("[t]he prosecutor in a criminal case shall . . . make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense").

[102] *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006); *Brady*, 373 U.S. at 87. For purposes of *Brady*, "[e]ven if the prosecutor was not personally aware of the audio recording, the State is not relieved of its duty to disclose because 'the State' includes, in addition to the prosecutor, other lawyers and employees in his office and members of law enforcement connected to the investigation and prosecution of the case." *Ex parte Reed*, 271 S.W.3d 609, 726 (Tex. Crim. App. 2008).

[103] We specifically reject the court of appeals' holding that the prosecutor's mere failure to inquire about discoverable items amounts to bad faith. While the failure to make an inquiry

In this case, we are merely asked to consider whether the prosecutor failed to comply with the terms of a statute. And, by its plain text, Article 39.14 does not contain a knowledge requirement similar to the types of claims discussed above. Once a timely request is received from the defense, the State's obligation to produce evidence that is "in the possession, custody, or control of the state or any person under contract with the state," excludes only the work product of counsel for the state and their investigators, and otherwise privileged or non-material items.[104] The statute's requirement that discovery be provided "as soon as practicable" is likewise triggered by the receipt of a timely request by the defense and is without any knowledge modifier or requirement.

The legislature is certainly capable of limiting an obligation imposed on counsel for the State with a knowledge requirement if it so desires. For example, Article 2.03 of the Texas Code of Criminal Procedure imposes a duty upon prosecutors to present by information, or bring to the notice of the grand jury, any officer for neglect or failure of duty or violation of law. But that statute, by its plain language, carefully limits that duty to whenever such violations come within the prosecutor's knowledge:

> It shall be the duty of the attorney representing the State to present by information to the court having jurisdiction, any officer for neglect or failure of any duty enjoined upon such officer, when such neglect or failure can be presented by information, *whenever*

---

can undercut a claim that the prosecutor turned over evidence "as soon as practicable," we need not make a determination as to whether the prosecutor's conduct amounted to bad faith.

[104] Tex. Code Crim. Proc. Ann. art. 39.14(a).

> *it shall come to the knowledge of said attorney* that there has been a neglect or failure of duty upon the part of said officer; and he shall bring to the notice of the grand jury any act of violation of law or neglect or failure of duty upon the part of any officer, when such violation, neglect or failure is not presented by information, and *whenever the same may come to his knowledge*.[105]

Article 39.14(a), on the other hand, contains no such knowledge requirement or limitation.  Accordingly, under the plain language of the statute, "the state" is under an obligation to produce material, non-privileged discovery that is "in the possession, custody, or control of the state" and must do so "as soon as practicable" upon receipt of the defense's timely request.  The State maintains that by promptly disclosing the recording "as soon as [the prosecutor] learned of the 911 call," the State complied with its duty to disclose "as soon as practicable."   But, as the State concedes, "as soon as practicable" is a timeliness requirement.

Because "practicable" in this context is not specifically defined,  we must look to the accepted common use of the term's meaning.[106]   By its common meaning, "practicable" is best understood mean "reasonably capable of being accomplished."[107]   Thus, as soon as it is capable of being accomplished or feasible, discovery must be produced.  To the extent that the

---

[105] Tex. Code Crim. Proc. Ann. art. 2.03(a) (emphasis added).

[106] Tex. Code Crim. Proc. Ann. art. 3.01 ("All words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common language, except where specially defined).

[107] Black's Law Dictionary, 1418 (11th Ed. 2019); *see also* Merriam-Webster's Collegiate Dictionary 974 (11th Ed. 2020) (defining "practicable" as "capable of being put into practice or of being done or accomplished: feasible"); *see Clinton*, 354 S.W.3d at 800.

definition of "practicable" includes a "reasonableness" requirement, we interpret that to be a requirement of reasonable diligence on the part of the prosecutor to discover what items the State has in its possession that it intends to introduce at trial.[108] While the prosecution may not be reasonably capable of producing evidence that has been lost or intentionally hidden by law enforcement, those are not the circumstances of this case. If a simple request to law enforcement for an item of discovery can result in its disclosure, as it did in this case, then disclosure is reasonably capable of being accomplished.[109] Article 39.14(a) makes clear that offense reports and witness statements obtained from law enforcement officers are subject to disclosure even though those items are in the possession of law enforcement.

This understanding of "practicable" also comports with our recognition that the broader, mandatory discovery obligation under the Michael Morton Act must be "complied with quickly."[110] If we were to interpret "as soon as practicable" to mean whenever discovery comes to the prosecutor's knowledge, then prosecutors could delay complying with Article 39.14 by simply refusing to ask law enforcement to turn over evidence in its possession. Here, the prosecutor reasonably could have produced the recording of the 911

---

[108] *See Hollowell v. State*, 571 S.W.2d 179, 180 (Tex. Crim. App. 1978).

[109] A statement from a law enforcement agency acknowledging that everything required to be disclosed under Article 39.14 had been disclosed to the prosecutor, as is required now by Article 2.1397, might suggest that any item not disclosed was not reasonably capable of being disclosed.

[110] *Watkins*, 619 S.W.3d at 278.

call in response to the defense's timely request for discovery sooner than she did. Because the recording was reasonably capable of being discovered by the state, the prosecutor did not disclose this evidence to the defense "as soon as practicable."

We agree with the State that Article 39.14 imposes discovery obligations, and those obligations are carried out by prosecutors as representatives of the State of Texas in criminal actions.[111] But the State's interpretation of the statute would then remove any duty on the part of the prosecution to seek out evidence to comply with Article 39.14 as well as any duty on the part of law enforcement to turn evidence over to the prosecution for disclosure. Under the State's interpretation of the phrase "as soon as practicable" and the reference to items in possession of "the state," prosecutors would be under no obligation to produce anything because they could always claim that the evidence was unknown and currently unavailable to the prosecutor, even if it were in the possession of a law enforcement agency and readily available upon request. Given that we have already determined that Article 39.14 includes items in the possession of law enforcement, it follows that the State has an obligation to exercise reasonable diligence to ascertain what discoverable evidence is at its disposal. In short, as Chief Justice Gray in the court of appeals observed, "once a discovery item

---

[111] Tex. Code Crim. Proc. Ann. art. 2.01 ("each district attorney shall represent the State in all criminal cases in the district courts of his district").

is requested, the State now has an affirmative duty to search for the item and produce it to the defendant in a timely manner."[112]

Here, interpreting "the state" under Article 39.14(a) as referring only to the prosecutor would render the statute's reference to "counsel for the state" meaningless, create conflict between subjections (a) and (h), and would completely undermine the broader legislative intent behind the statute. Likewise, interpreting "as soon as practicable" to contain a knowledge requirement on the part of the prosecutor contravenes the plain text of the statute and would require us to ignore the context in which that phrase appears. Consequently, we hold that under Article 39.14, "the state" means the State of Texas, which includes law enforcement agencies, and imposes a duty upon prosecutors as representatives of "the state" to disclose discoverable evidence "as soon as practicable," meaning as soon as the State is reasonably capable of doing so, upon receiving a timely request from the defense.

## Was Article 39.14(a) Violated?

It was. We hold that the trial court did not err to determine that the State violated Article 39.14(a) when it disclosed the 911 call fourteen months after Appellee's timely request. The trial court found that law enforcement was in possession of the 911 call since the date of the alleged offense in November of 2016. A timely request for discovery was made by defense

---

[112] *Heath*, 642 S.W.3d at 597.

counsel on March 20, 2017. There is no dispute that the recording of the 911 call is material evidence that is required to be disclosed under Article 39.14. The recording of the 911 call was disclosed and produced to the defense on May 23, 2018, just days before trial was to begin on May 29—the fourth trial setting in this case. The trial court also found that the recording of the 911 call was in the possession of law enforcement, unbeknownst to the prosecutor, until on or about May 18, 2018. The record supports these findings.

The trial court concluded that the State violated Article 39.14(a) because the State's duty to disclose extends to discoverable items that are in the possession, custody, and control of "the state," which includes items in the possession of law enforcement agencies. The trial court also concluded that the prosecutor had a specific duty to ascertain what discoverable evidence was available and disclose it to the defense as soon as practicable. And, finally, the trial court concluded that the recording of the 911 call was not disclosed "as soon as practicable" given that law enforcement had possession of the recording for eighteen months and the defense submitted a timely request for discovery fourteen months prior to the fourth trial setting. Under these facts, we hold the trial court did not abuse its discretion in determining that the State had violated Article 39.14 by failing to disclose the 911 call as soon as practicable after the defendant's request for discovery.

## Does a Trial Court have the Authority to Exclude Evidence for a Violation of Article 39.14?

Having held that the trial court did not err in concluding that the State's untimely disclosure of the 911 call violated Article 39.14(a), we must next consider the trial court's authority to exclude the evidence. The trial court granted Appellee's motion to exclude the 911 call at trial and the court of appeals held that the trial court did not abuse its discretion in doing so.[113] The court of appeals reasoned that "a failure to at least inquire about the existence of discoverable items in response to a proper request in a timely manner is all the evidence necessary to show that the failure to timely produce the item in discovery was due to what was previously characterized as a 'willful violation' or 'bad faith.'"[114] As explained below, we agree with the lower court's holding that the trial court did not abuse its discretion but we disagree that the failure to inquire about the existence of discoverable evidence rises to the level of "bad faith" on the part of the prosecutor. Instead, we hold that the trial court had the inherent authority to fashion a remedy to control its docket and was not required to find the State acted in bad faith in order to exclude the evidence for a violation of Article 39.14.

The State argues that the trial court lacks authority to exclude evidence for a discovery violation absent bad faith on behalf of the prosecution or

---

[113] *Heath*, 642 S.W.3d at 597 ("In a situation where the prosecutor was set for trial and presumably ready to proceed to trial without the evidence on three prior settings, the ruling by the trial court excluding the evidence that was not previously produced, in this instance the recording of the 9-1-1 call, is not an abuse of discretion. The trial court fashioned an appropriate sanction for the State's failure to timely produce the recording in response to the discovery request.").

[114] *Id.*

prejudice to the defendant. Appellee argues that trial courts have authority under the common law or, alternatively, pursuant to their inherent authority to exclude evidence that was willfully withheld from disclosure. Appellee further argues that the record demonstrates a willful violation of the State's discovery obligation because the State announced ready for trial four times over a period of many months before the call was produced. Appellee argues, alternatively, that the determination of willfulness is at least within the zone of reasonable disagreement. Thus, while the parties do not dispute that the trial court has the authority to exclude evidence based on a violation of Article 39.14; they dispute, under what set of facts, a trial court may exercise that authority. Ultimately, we disagree with the State that a trial court's authority is so limited.

A trial court's decision to exclude evidence is reviewed under an abuse of discretion standard meaning that its decision will not be overturned unless it falls outsize of the zone of reasonable disagreement.[115] This is the standard we have historically applied to a trial court's decision to exclude evidence for discovery violations pre-Michael Morton Act.[116] It is also the standard applied when considering the admission or exclusion of evidence in other contexts.[117]

---

[115] *Francis*, 428 S.W.3d at 855.

[116] *Id.; see also Oprean*, 201 S.W.3d at 726.

[117] *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011) ("A trial judge's decision on the admissibility of evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement."); *Russeau v. State*, 291 S.W.3d 426, 438 (Tex. Crim. App. 2009) ("A trial court's ruling admitting evidence will not be reversed on appeal absent a clear abuse of discretion.").

We conclude it is the standard that should apply to a trial court's decision to exclude evidence for a discovery violation today.

Article 39.14 has never included a provision concerning the remedy for a discovery violation, but this Court recognized a trial court's authority to exclude inculpatory evidence withheld, even inadvertently, in violation of a discovery order in *Hollowell v. State*.[118] In that case, the defense argued that due process was violated by the introduction of palmprint evidence connecting the defendant to the scene of a burglary, which had not been disclosed pretrial despite a trial court order for discovery.[119] This Court explained "[t]he State's contention that it was unaware of the existence of the print until after the trial was in progress is untenable."[120] The Court noted the palmprint was real evidence obtained by the investigating officer, which clearly fell within the discovery motion that had been granted.[121] We specifically recognized that "just as defense counsel has an obligation to investigate the case before he goes to trial, the prosecutor has a duty to know what evidence is at his disposal."[122] And we went on to explain that the prosecutor had an obligation to know what evidence was at his disposal, citing the discovery motion's

---

[118] *Hollowell*, 571 S.W.2d at 180.

[119] *Id*.

[120] *Id.*

[121] *Id.*

[122] *Id.*

specific reference to evidence in the possession of law enforcement as additional support for the conclusion that the prosecutor had a specific duty to ascertain what evidence within the terms of the granted motion was held by law enforcement.[123]  Though we ultimately held that the admission of the palmprint evidence was harmless in light of other evidence presented at trial, we nevertheless held that the State's failure to ascertain what evidence it had at its disposal amounted to a willful violation of the trial court's discovery order.[124]

Decades later, we continued to cite *Hollowell* for the proposition that evidence willfully withheld should be excluded but the application of the willfulness standard misinterpreted our holding in *Hollowell*.  Later cases developed to essentially require a showing of "bad faith" on the part of the prosecution due to a specific intent to knowingly violate a discovery order or frustrate the defense.  In *Francis v. State*, for example, we explained:

> Because exclusion of evidence in this context is in the nature of a court-fashioned sanction for prosecutorial misconduct, whether the trial court should exclude evidence on this basis has been made to hinge on 'whether the prosecutor acted with the specific intent to willfully disobey the discovery order.' Extreme negligence or even recklessness on the prosecutor's part in failing to comply with a discovery order will not, standing alone, justify the sanction of excluding relevant evidence.[125]

---

[123] *Id.*

[124] *Id.*

[125] *Francis*, 428 S.W.3d at 855.

The defendant in *Francis* was charged with aggravated robbery and the indictment alleged that he used a deadly weapon, namely a knife.[126] A pretrial discovery order directed the State to provide the defense with an opportunity to inspect all physical objects to be introduced as evidence and all weapons seized or acquired as part of the investigation.[127] At trial, the defense objected to the introduction of a machete at trial, arguing that it had not been previously made aware of the weapon's existence.[128] The prosecutor claimed that although the machete was in her exclusive possession prior to trial, she believed the defense was aware of its existence.[129] The prosecutor denied a conscious objective to thwart the discovery order.[130] The trial court declined to exclude the weapon and, in a splintered decision, the court of appeals concluded that the trial court did not err because it could have reasonably concluded that the prosecutor did not willfully violate the discovery order.[131] We concluded that, while the trial court could have rationally concluded that the prosecutor's conduct constituted a calculated effort to frustrate the known dictates of the pretrial discovery order, the trial court was not obligated to

---

[126] *Id.* at 852.

[127] *Id.*

[128] *Id.*

[129] *Id.* at 856-57.

[130] *Id.* at 856.

[131] *Id.* at 854.

draw that conclusion.[132]  We reasoned that the trial court was free to credit the prosecutor's explanation for the lack of disclosure and, because the facts did not ineluctably establish willfulness, we held that the trial court did not abuse its discretion.[133]

On the other hand, in *Oprean v. State*, we found the State's failure to turn over a DWI videotape in discovery was willful and thus mandated the exclusion of the evidence.[134]  In that case, the State failed to disclose a videotape prior to trial, which depicted the defendant's prior DWI offense that it intended to introduce at punishment in violation of the discovery order.[135] The trial court admitted the tape over the defense's objection.[136]  We held that the prosecutor's conduct demonstrated a calculated effort to frustrate the defense considering the prosecutor's statements and actions.[137]  First, we pointed out that the prosecutor told defense counsel that she only intended to introduce the previous judgments at punishment.  We noted the absence of any suggestion that the prosecutor only subsequently learned of the video's existence.  Also, although the prosecutor argued that the discovery order

---

[132] *Id.* at 856.

[133] *Id.* at 858-59.

[134] *Oprean*, 201 S.W.3d at 728.

[135] *Id.* at 725.

[136] *Id.* at 725.

[137] *Id.* at 728.

contained no Article 37.07[138] charge and the defense made no such request, we reasoned it was clear that she was aware of the discovery order which unambiguously required the State to disclose the tape before trial.[139] We held that the trial court abused its discretion in admitting the videotape over defense's objection.[140]

In *State v. LaRue*, we also considered a trial court's authority to impose sanctions for the State's failure to comply with a discovery order.[141] In that case, the State failed to timely disclose, pursuant to a discovery order and repeated requests from the defense, DNA evidence which the trial court excluded as a result of the State's noncompliance.[142] The trial court found that the State's failure to timely provide the court-ordered discovery exceeded negligent conduct and was, in fact, willful.[143] The court of appeals held that the trial court erred to exclude the evidence because the record did not support a finding of intentional disobedience of the trial court's discovery order

---

[138] Tex. Code Crim. Proc. Ann. art. 37.07 § 3(g) ("On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence.").

[139] *Oprean*, 201 S.W.3d at 727-28 ("Because the prosecutor knew about the discovery order and chose to invoke Article 37.07 after counsel called her attention to the order, she made a conscious decision to violate the plain directive of the discovery order.").

[140] *Id.* at 728.

[141] *State v. LaRue*, 152 S.W.3d 95, 97 (Tex. Crim. App. 2004).

[142] *Id.* at 96.

[143] *Id.*

and did not reflect a willful violation of that order.[144]  We affirmed the court of appeals' judgment, reasoning that, though the prosecutor failed to comply with the discovery order—which even he described as 'grievous error'—there was no evidence showing that he acted with the specific purpose of disobeying the court's discovery order.[145]  While the prosecutor's conduct itself was "willful," in that his actions were voluntary, we found no evidence that, "by his choice, he intended to violate the order or harm the defense."[146]  We held that the trial court erred in excluding the evidence, but expressed no opinion as to what lesser sanction should have been imposed given that the prosecutor's conduct was "of a less culpable nature."[147]

Our prior cases analyzed the remedy for a statutory discovery violation as a sanction for the violation of a court order.  This makes sense given that prior to the Michael Morton Act, there was no general right to discovery and Article 39.14 required a showing of good cause and the entry of a trial court order for discovery.  However, some of our case law appears to have misinterpreted *Hollowell*'s standard of willfulness to require something akin to intentionally acting in bad faith.  Furthermore, our prior cases focused on exclusion as a remedy in the context of bad faith because those were the

---

[144] *Id.* at 96-97.

[145] *Id.* at 99.

[146] *Id.* at 97.

[147] *Id.* at 100 (noting neither party presented argument on the issue).

arguments raised, not because the trial court's inherent authority is so limited.[148]

Indeed, the approach to discovery in civil cases suggests trial courts possess much broader inherent authority to fashion a remedy for a discovery violation. Unlike Article 39.14, the Civil Rules of Procedure contain provisions for both failing to comply with an order or request for discovery and failing to make a discovery response,[149] including a required disclosure, in a timely matter.[150] Rule 215.2 provides a non-exhaustive list of possible sanctions by a court for the failure to comply with proper discovery requests or orders that permits a trial court to "make such orders in regard to the failure as are just," and includes, "among others" disallowing further discovery, charging discovery expenses, prohibiting matters in evidence, prohibiting the disobedient party from making designated claims or defenses, and even taking as established facts regarding the matter for which discovery was ordered.[151] Likewise, the civil rules provide that:

---

[148] Tex. Gov't Code Ann. § 21.001(a) & (b) (A court has all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue the writs and orders necessary or proper in aid of its jurisdiction. A court shall require that proceedings be conducted . . . in an orderly and expeditious manner and control the proceedings so that justice is done"); *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (recognizing district courts possess inherent powers "governed not by rule of statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)).

[149] Tex. R. Civ. P. 215.2 (Failure to Comply with Order or with Discovery Request).

[150] Tex. R. Civ. P. 193.6 (Failing to Timely Respond – Effect on Trial).

[151] Tex. R. Civ. P. 215.2(b) (Sanctions by Court in Which Action is Pending).

A party who fails to make, amend, or supplement a discovery response, including a required disclosure, in a timely manner may not introduce in evidence the material or information that was not timely disclosed . . . unless the court finds that (1) there was good cause of the failure to timely make, amend, or supplement the discovery response; or (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.[152]

Notably, under the civil rules exclusion of evidence that was not timely disclosed is the default. The civil rules place a burden upon the party seeking to introduce the evidence to explain or justify the failure to comply with discovery.[153] And while the rule allows for an exception to exclusion based upon a showing of "good cause" by the party who committed the discovery violation,[154] inadvertent failure to discover the existence of evidence does not satisfy that burden.[155] Further, even if that burden is met, the rule authorizes a trial court to grant a continuance or temporarily postpone trial.[156] The civil rules concerning discovery are court made rules and implicit in the promulgation of these rules is the recognition that courts have inherent authority to fashion appropriate remedies when addressing discovery

---

[152] Tex. R. Civ. P. 193.6(a) (Exclusion of evidence and exceptions).

[153] Tex. R. Civ. P. 193.6(b).

[154] *Alvarado v. Farah Mfg. Co., Inc.*, 830 S.W.2d 911, 914 (Tex. 1992) ("The good cause exception permits a trial court to excuse a failure to comply with discovery in difficult or impossible circumstances.").

[155] *Id.* at 915 ("If inadvertence of counsel, by itself, were good cause, the exception would swallow up the rule, for there would be few cases in which counsel would admit to making a deliberate decision not to comply with the discovery rules.").

[156] Tex. R. Civ. P. 193.6(c).

violations.  The civil rules' approach demonstrates that a trial court's inherent authority to fashion an appropriate remedy for a discovery violation is not limited to constitutional or ethical violations or bad faith defiance of a court order.  To the extent that a violation of discovery must be willful, the failure to exercise reasonable diligence in ascertaining whether discoverable evidence exists satisfies that requirement even if it would not rise to the level of bad faith necessary to establish a constitutional or ethical violation.[157]

We agree with the court of appeals' conclusion that the old concept of 'bad faith' no longer applied to Article 39.14 given the "substantive change to the process for the disclosure of requested items."[158]  As the lower court explained, "[i]t is no longer sufficient for the State to wait until it gets ready, or when the prosecutor decides to prepare the case for trial, to then search out and produce properly requested discovery."[159]  Article 39.14(a) now contains a timeliness requirement and a prosecutor may inadvertently violate the statute by failing to exercise reasonable diligence in seeking out discoverable items.[160]

---

[157] *See Hollowell*, 571 S.W.2d at 180 (discovery order "placed a specific duty on the prosecutor to ascertain what evidence within the terms of the granted motion was held by the police and to make such evidence available to the defense under the terms of the order").

[158] *Heath*, 642 S.W.3d at 597.

[159] *Id.*

[160] *Id.*

The State maintains that the appropriate remedy for an untimely disclosure is a continuance to allow defense counsel more time to review the recently disclosed evidence.[161] We acknowledge that a continuance would be a much more restrained solution.  But that's not the question before us.  The question before us is whether the trial court had the authority to impose the remedy it did.  That the trial court could have imposed a lesser remedy, assuming the formal requirements for a continuance were met, does not mean the trial court abused its discretion by excluding the evidence in this case.  It may very well be that reasonable jurists could disagree about the appropriate remedy in a particular case, but unless the trial court's decision is outside of the zone of reasonable disagreement, this Court will not overturn its ruling.[162] We agree with the court of appeals that the trial court was within its discretion to fashion a remedy it deemed appropriate.

Next, the State argues that the defense's rejection of a continuance does not establish prejudice, and, in fact, it may establish its absence.  But as we explained above, regardless of the defendant's rejection of the State's oral motion for continuance, the state's failure to ascertain the evidence it intended to introduce at trial in a timely fashion was enough of a showing of willfulness

---

[161] If the State desired a continuance, however, it was required to file a written motion. Tex. Code Crim. Proc. Ann. art. 29.03 ("A criminal action may be continued on the written motion of the State of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion."); *Smith v. State*, 676 S.W.2d 379, 385 (Tex. Crim. App. 1984) (holding an oral motion for continuance properly overruled because all motion for continuance must be in writing and sworn to).

[162] *Oprean*, 201 S.W.3d at 726.

to justify the trial court's remedy of exclusion even if it did not rise to the level of a constitutional or ethical violation.  As the trial court noted, this case was on its fourth trial setting and the State had announced ready for trial at three previous trial settings.  Though it might have been better practice for the trial court to grant even a short recess, assuming the necessary procedural requirements were met, the trial court was within its authority to reject the State's argument for a continuance.

Based upon the record in this case, we conclude that the trial court did not abuse its discretion in excluding evidence of the 911 call due to the State's untimely disclosure in violation of Article 39.14.  Based on  the prosecutor's failure to seek out evidence at the State's disposal, the length of time between the discovery request and disclosure – 14 months, and the State's three previous announcements of ready for trial without the evidence at hand, the trial court could have reasonably determined that the appropriate remedy for the State's statutory discovery violation was the exclusion of the 911 call. While exclusion was not the only remedy available to the trial court, it was not a remedy that was beyond the trial court's discretion to impose.

## Conclusion

Under Article 39.14, "the state" means the State of Texas, not an individual prosecutor or a district attorney's office.  While the statutorily imposed discovery obligations fall on the prosecutor as the State of Texas' representative in criminal cases, the obligation to produce material evidence

extends to evidence that is in the possession of law enforcement agencies.  As such, the prosecution may inadvertently violate Article 39.14 by failing to disclose evidence that is in the possession of law enforcement because it has an obligation to ascertain what evidence is available to it, as well as an obligation to disclose that evidence to the defense as soon as practicable upon timely request.  Here, the State violated its duty under Article 39.14 by failing to timely disclose evidence of a 911 call made by the complainant's mother on the date of the alleged offense.  Though the prosecutor was unaware of the recording when Appellee made his discovery request nearly fourteen months prior and on the three separate occasions when the State announced it was ready to proceed to trial in this case, the State was obligated to find out what evidence was available to it.  Under these circumstances, the trial court acted within its discretion to exclude the 911 call based on a violation of the discovery statute.  Accordingly, we affirm the judgment of the court of appeals.

Delivered: June 12, 2024

Publish